## McMURRAY & Others *v.* MALLORY & Another.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF MARYLAND.

Argued March 11th, 12th, 1884.—Decided March 24th, 1884.

*Patent.*

If a patent is granted for a combination, one part of which is of a form described in the patent as adapted by reason of its shape to perform certain specified functions, and the patent is surrendered and a reissue taken which expands some of the claims so as to cover every other form of this part of the combination, whether adapted to perform those functions or not, the reissue is void as to such expanded claims.

A patent for a combination is not infringed by using one part of it combined with other devices substantially different from those described in the patent in form or mode of arrangement and combination with the other parts.

It is not competent for a patentee who has surrendered his letters patent and made oath that he believes that by reason of an insufficient or defective specification the surrendered letters are inoperative and void, and has taken out reissued letters on a new specification and for new claims, to abandon the reissue and resume the original patent by a disclaimer.

The original letters patent to Abel Barker, of May 17th, 1870, for an improvement in soldering machines was for a combination of a rod with a disk of a particular form and shape, which was essential to it. In the reissue the first three claims were so expanded as to embrace all forms of soldering irons in combination with a movable rod, and the reissue was void to that extent.

The first claim in the reissue to E. M. Lang & Co., October 29th, 1878, of a

patent for an improvement in soldering irons granted to Jabez A. Bostwick, June 21st, 1870, was for a different invention from that described in the original patent, and is void.

This was a suit in equity for an alleged infringement of a reissued patent for improvement in soldering machines. The defence denied the invention, and denied the validity of the reissued patent by reason of defects in the surrender, and because the reissue was not for the same invention which was described in the original.

The facts making the case appear in the opinion of the court.

*Mr. Benjamin Price* for appellants.

*Mr. Robert H. Smith* and *Mr. Sebastian Brown* for appellees.

Mr. JUSTICE WOODS delivered the opinion of the court.

This bill was filed September 2d, 1879, by Louis McMurray, Edward M. Lang, and George Burnham, doing business as a firm under the name of McMurray, Lang & Burnham, against Dwight D. Mallory and Jesse C. Luddington, doing business as a firm under the name of D. D. Mallory & Co., to restrain the infringement by them of two certain letters patent. The first was a reissued patent " for certain new and useful improvements in soldering machines," the original of which had been granted to Abel Barker, May 17th, 1870, reissued to Edward M. Lang, one of complainants, January 11th, 1876, and again reissued to him July 1st, 1879 ; the second was a reissued patent for an " improvement in soldering irons," the original of which had been granted to Jabez A. Bostwick, June 21st, 1870, and reissued October 29th, 1878, to E. M. Larg & Co.

The answer of the defendants denied the infringement of either of the patents on which the suit was brought, denied that either Barker or Bostwick was the original inventor of the improvements for which the original letters patent were issued to them respectively, denied that either of the letters patent were ever surrendered according to law, and alleged that the reissues were not for the same inventions as those described in the original letters patent. Upon final hearing, the Circuit

Court dismissed the bill, and the complainants have brought that decree under review by this appeal.

We shall first consider the Barker patent. The original patent was described in the specification as "a new and useful machine for opening and closing or sealing fruit, oyster, and all other cans, hermetically sealed." The specification was illustrated by drawings, as follows:

They were described thus: "Figure 1 is a vertical section; Figure 2 is a representation of the machine as applied to a can in opening; Figure 3 as applied in closing or sealing with the disk withdrawn and the sliding-rod pressed upon the cover to hold it until the solder or sealing material hardens." The specification then proceeds as follows: ·

"In constructing this machine I make the disk or casting A of sufficient thickness to retain the heat, and of suitable size to cover the lid of the can, with the recess B in the under side to give room for the convex lid of the can, and to confine the soldering process to the outer edge of the lid or cover.

"To this disk I connect the handle C, of sufficient length to hold when heated.

"At the side of, and parallel with, the handle I connect the small rod or wire D, with a loop or ring connecting it with the handle at the top and the bottom, passing through the disk A, so as to allow it to slide up and down."

The process of sealing a can was thus described:

"The disk A is sufficiently heated to melt the solder.  The rod D is pushed down through the disk, and placed upon the center of the cover to hold it.  The heated disk is then to be pushed down, in contact with the solder or sealing material till it is melted, then turned back and forth till the solder is spread evenly around the lid.  The disk is then to be withdrawn, with the rod D still pressed upon the lid, till the solder or sealing material sets or hardens, when the operation is completed."

The claim was as follows:

"The disk A, with the recess B in the under side, as set forth, in combination with the movable rod or wire D, to hold the lid while resealing or closing."

The specification of the reissue upon which the suit is brought, and the drawings and the description of the drawings, were substantially the same as for the original patent.  It is apparent, therefore, that the reissue was not for the purpose of making the original specification more full, accurate or intelligible, or for the purpose of eliminating from it what the inventor had not the right to claim as new.  The claims of the reissue, which were five in number, were as follows:

"1. In a soldering machine, a rod adapted to hold the can cap or lid in place, in combination with a soldering-iron mounted upon and arranged to be rotated about said rod, substantially as described.

"2. In a soldering machine, a rod adapted to hold the can cap or lid in place, in combination with a soldering-iron sliding upon said rod and adapted to be rotated about it, as set forth.

"3. In combination with a soldering tool or die, the rod D in passing through said tool or die to hold the can cap or lid in the process of soldering, substantially as described.

"4. In a soldering machine, the combination, with a soldering tool conforming in shape to the cap to be soldered, of an independently movable rod D, upon which the said tool is mounted, substantially as described

"5. The disk, or tool A, with the recess B in its under side, in combination with and mounted upon the independently movable rod or wire D, as set forth."

The proof showed that defendant used the instrument described in the letters patent issued to Tillery & Ewalt, May 21st, 1872.

The specification of these letters was illustrated by the following drawing:

*Fig. 1.*

The specification described the invention as follows:

"The invention consists, first, in making a soldering-tool ad-

justable radially from a hinge-joint, in order to adapt the same tool to be used with caps of varying size ; second, in moving said tool out and in, at the same time fixing it at any point of adjustment by means of a screw that has a loop-head through which passes the holder.

"A represents our soldering-tool, provided with a cap-holder, B, which maintains the cap in position while the soldering-iron C is rotated.   D is a stock, in which the shank $d$ of soldering-iron is held at any point by a clamp-screw $a$.   E is the body, in which the stock D is hinged at $e$, while the holder B passes vertically and loosely therethrough.   F is a screw, having loop-head $f$, which connects the said holder B and stock D, while it allows them to be spaced at any desired distance apart.   In order to effect a change in the radial distance between the centering holder B and the stock D that holds the soldering-iron, the holder is first removed and the screw F moved in or out.

"The advantages of this tool consist, first, in the arc-shape by which we can see at a glance any point which has been left unsoldered or imperfectly soldered, and which defect can be remedied at once without removing the tool ; second, in the option that it allows us using either wire solder or the cheaper drop solder, thereby saving one-half the expense."

There is no doubt that the first three claims of the reissued patent of Barker cover the device here described, but are void, because they are, each of them, broader than the claim of the original patent.   The claim of the original patent was for a combination; that is to say, a combination of the disk A with the recess B on its under side, and the movable rod D to hold the lid of the can while resealing or closing.   The specification mentioned a disk and particularly described and illustrated it as forming a part of the combination.   By its size, shape, and the recess in its under surface, it was designed to perform certain specified functions.   It was made thick so as to retain the heat; it was made circular, like the lid of the can, and of sufficient diameter to cover the lid, so as to reach its outer edge, where the soldering was to be done, and it had the recess in its under side sufficient to give room for the convexity of the lid

so as to confine the soldering process to the outer edge of the lid.

The patent did not therefore include every soldering-iron of whatever form and shape. In the case of *Prouty* v. *Ruggles*, 16 Pet. 336, it was said of a patent for a combination consisting of three parts, that "the use of any two of these parts only, or of two combined with a third which is substantially different in form, or in the manner of its arrangement and connection with the others," is not an infringement. "It is not the same combination if it substantially differs from it in any of its parts." The disk, therefore, in the Barker patent, substantially as described, is an essential element of the combination covered by that patent.

In the reissue the first three claims of the Barker patent are expanded so as to include all soldering-irons, no matter what their shape or size, or specific advantages, in combination with the movable rod *D*. The contention of the appellants that a device so unlike the soldering-tool described in the original Barker patent as the Tillery & Ewalt tool is embraced by the first three claims of the reissue, is striking proof of the expansion of the original claim. It is plain that the claims mentioned include many soldering devices not covered by the original patent. The claims are therefore void. *Gill* v. *Wells*, 22 Wall. 1; *The Wood Paper Patent*, 23 id. 568; *Powder Company* v. *Powder Works*, 98 U. S. 126; *Ball* v. *Langles*, 102 id. 128; *Miller* v. *Brass Company*, 104 id. 350; *James* v. *Campbell*, id. 356; *Heald* v. *Rice*, id. 737; *Johnson* v. *Railroad Company*, 105 id. 539; *Bantz* v. *Frantz*, id. 160; *Wing* v. *Anthony*, 106 U. S. 142.

The fourth and fifth claims of the reissued Barker patent are not, in our opinion, infringed by the defendants.

The fourth claim embraces as one element of the combination a soldering-iron in shape of the cap or lid to be soldered. The shape of the iron is expressly made an essential part of the combination. This element is wanting in the Tillery & Ewalt device used by the defendants. The soldering-iron used by them is totally unlike in shape a cap or lid or the disk described in the Barker patent. One of the two elements of the combination

covered by the fourth claim of the Barker reissue is, therefore, clearly wanting in the Tillery & Ewalt device, and there can consequently be no infringement.

The fifth and last claim of the reissued Barker patent is identical with the claim of the original patent, and is, therefore, free from the objection to which the first three are open. But we think it also is not infringed by the device used by the defendants. The soldering-iron described in both the original and reissued Barker patent is a disk of suitable size to cover the lid of the can to be soldered, with the recess B, in the under side, to give room for the convex lid of the can and to confine the soldering process to the outer edge of the lid or cover. This is entirely unlike the soldering-iron described in the Tillery & Ewalt patent, the tool used by the defendants. The latter is not a disk, but closely resembles the common soldering-iron, which is an old and familiar tool, and differs from it only in not having a pointed end, but one made so as to form a short arc of a small circle. The device covered by the Tillery & Ewalt patent was contrived for two purposes, neither of which the Barker contrivance is capable of accomplishing, namely, the adjustment of the soldering-iron radially from a hinge joint in order to adapt the same tool to be used with caps or lids of different sizes, and second, the giving of the soldering-iron such a shape as that it would not hide the process of soldering, but made it possible to see at a glance, without removing the tool, any part of the cap which had been left unsoldered.

The contention of the appellants, that the soldering-iron of the Tillery & Ewalt patent is merely the disk of the Barker patent with a large part of its circumference removed, defeats itself, for when a large part of the disk is removed it ceases to be a disk, and becomes the mere soldering-iron of the Tillery & Ewalt device; whereas, as we have seen, a disk is an essential element in the invention covered by the Barker patent.

We think that by no stretch of construction can the device used by defendants be included in the fourth and fifth claims of the Barker reissued patent, and that the defendants do not infringe those claims.

It remains to consider whether the appellants were entitled

to relief against the defendants for the alleged infringement of the Bostwick patent.

The original Bostwick patent was for " a new and useful soldering-iron, for soldering metallic caps or other projecting pieces on metallic vessels." It related, so the specification states, " to the construction and use of a hollow soldering-iron, for soldering metallic caps or other projecting pieces upon metallic oil-cans or other vessels; said iron, when made with an inclosing edge of the dimensions and form of the rim or edge of the cap or piece to be soldered, so as to conform thereto when placed thereon, and so extended and formed interiorly as to receive and embrace loosely a guiding-rod to be placed upon the cap to be soldered, to hold the latter down firmly until it has been secured by the solder, and at the same time guide the iron to its proper place upon or against the rim or edge of the cap."

The specification was illustrated by drawings, as follows:

Fig.1.

Fig.2.

The manner in which the device was to be used was thus stated:

"After the iron has been properly heated it is slipped over this rod, and the rod being then placed upon the cap, is held thereon firmly, while the lower rim of the heated iron, duly supplied with

solder, bearing upon the joint of the cap with the vessel, will instantly solder and secure the same about its entire circumference.

"By lifting the rod, its shoulder, engaging with the offset within the iron, will take up the latter with it in readiness to be placed upon another cap, and thus a number of caps may quickly and thoroughly be soldered at one heat of the iron."

The specification then proceeds:

"I contemplate making the soldering-iron A and its guiding-rod C of any form in transverse section which may be required, to cause it to fit upon any form of cap or other projection, whether round, square, oval, or of any other curved or polygonal shape. Its lower rim or edge need not be made continuous, but may be broken or slotted."

The claim was as follows:

"The hollow soldering-iron A, having a handle B and bevelled rim *a a* in combination with the rod C, substantially as herein described and set forth."

On September 3, 1878, Bostwick, with the assent of E. M. Lang & Co., the assignees, made application to the Patent Office for a reissue of his patent.

His application was granted, and his patent reissued with a largely expanded specification, and with two claims instead of one, which were as follows:

"1. A tool for soldering the caps on cans, consisting of a soldering-iron revolving about a central pivotal rod, which is made to rest upon and steady the cap during the operation of soldering.

"2. The combination of a hollow iron for soldering caps on cans with a separate and inclosed weight for steadying the cap on the can during the operation of the soldering."

Comparing the first claim of the reissue with the claim of the original patent, it appears that the former has been greatly broadened. The claim of the original patent was for a combination. One element of the combination was a hollow soldering-iron A, with the handle B and bevelled rim *a a*. This was

described in the specification as a hollow cylinder of metal, made to fit over and inclose the metallic cap to be soldered, its inner diameter at its lower end being somewhat greater than that of the cap. This was nothing more than the annular soldering-iron, which it is conceded was old when the Bostwick patent was issued. The second element was the rod C, whose lower end was described to be about equal in diameter to that of the cap to be soldered.

The first claim of the reissued patent is expanded to embrace as the first element of the combination any "tool for soldering caps," no matter what its shape or size. This tool is made to revolve about a central pivotal rod. The idea of revolving the soldering-tool about the pivotal rod is not suggested in the original patent, but is excluded by the statement in the specification that the inventor contemplated making the soldering-iron and the guiding-rod of any form in transverse section necessary to fit in any form of cap, whether round, square, oval, or of any other curved or polygonal shape.

The claim under consideration does not describe with any accuracy the device covered by the original patent, but is made broad enough to include any soldering-iron which is constructed to revolve about a central pivotal rod resting on the cap to be soldered. This claim, however, does accurately describe the Tillery & Ewalt device, and it is apparent, from the record. that it was drawn for the purpose of making the use of the latter an infringement on the reissued patent. It could not do this without expanding the claim of the original patent. In our judgment, therefore the invention thus described and claimed is a different invention from that described and claimed in the original patent, and the claim is therefore void.

The second claim of the reissued patent, it is clear, is not infringed by the use of the Tillery & Ewalt device. The latter employs no hollow soldering-iron, nor does it have a separate and inclosed weight for steadying the cap in the can during the process of soldering—both of which are essential, and they are the only elements of the claim.

The appellants have endeavored to avoid the objection to the reissued Bostwick patent by filing a disclaimer in the Patent

Office. The disclaimer was filed September 24th, 1883, more than two years and a half after the final decree in the Circuit Court, and while the case was pending on appeal in this court. If the appellants are, under these circumstances, entitled to have the disclaimer considered, it cannot aid their case.

In support of the application for reissue of his original patent, which was made by Bostwick with the assent and in behalf of the appellants, he took an oath as follows: "That he believes that by reason of an insufficient or defective specification his aforesaid letters patent are inoperative or invalid."

By the disclaimer referred to, the appellants declare that they thereby " disclaim all words, phrases and sentences introduced in the specification" of the reissued patent " which may mean or may be construed to contain any other or different invention than that justly belonging to the inventor and fairly included in the invention as originally described and claimed," and that they "desire that the reissued patent when the disclaimed matter is cancelled should read as follows." Then follows a specification and claim, which with the exception of six consecutive words, not affecting its meaning, is identical with the specification and claim of the original patent. The purpose of the disclaimer, and its effect, if valid, was to abandon the reissued patent and resume the original. We are of opinion that this could not be done by a disclaimer. The original patent had been declared on the oath of the patentee to be invalid and inoperative. It had been surrendered and cancelled and re-issued letters patent granted in its place. It is not competent for the patentee or his assignees, by merely disclaiming all the changes made in the reissued patent, to revive and restore the original patent. This could be done only, if it could be done at all, by surrender of the reissued patent and the grant of another reissue.

It follows from these views that

*The decree of the Circuit Court dismissing the appellant's bill must be affirmed.*