**STATE ex rel. BREENE, Chief Deputy Inspector of Oil and Gas, v. HOWARD, State Auditor.**

No. 9114—Opinion Filed Feb. 12, 1918.

(171 Pac. 30.)

(Syllabus.)

1. **States — Executive Offices — Creation and Abolition — Legislative Power.**

The office of chief deputy inspector of oil and gas wells, created by chapter 207, Laws 1913, p. 459, was not imbedded in the Constitution nor created in pursuance of any mandate thereof, but was purely a creation of the statute, and it was within the power of the Legislature to abolish the office by transferring the duties thereof.

2. **Constitutional Law — Legislative Power —Right to Question.**

Relator, as chief deputy inspector of oil and gas wells, cannot urge the objection that

the Legislature is without power to denude the office of chief mine inspector of any portion of the duties thereof with reference to the inspector of oil and gas.

### 3. Statutes — Amendment by Reference — Constitutional Provisions.

Chapter 207, Laws 1917, p. 385, does not purport to amend any prior law, but on its face appears to be an act in itself, and is not within the inhibition of article 5, § 57, Williams' Constitution, even though it seeks to effectuate the power conferred by reference to and requiring the officers thereby created to proceed in the performance of their duties in accordance with general laws formerly enacted.

Error from District Court, Oklahoma County; Edward Dewes Oldfield, Judge.

Mandamus by the State of Oklahoma, on relation of H. H. Breene, Chief Deputy Inspector of Oil and Gas, against E. B. Howard, State Auditor. Judgment for defendant, and plaintiff brings error. Affirmed.

Hainer, Burns & Toney and Stuart, Cruce & Cruce, for plaintiff in error.

S. P. Freeling, Atty. Gen., and J. I. Howard, Asst. Atty. Gen., for defendant in error.

HARDY, J. The state, upon the relation of H. H. Breene as chief deputy inspector of oil and gas, commenced an action in the district court of Oklahoma county against E. B. Howard, as state auditor, praying a writ of mandamus directed to said defendant requiring him to audit and allow the claims of relator for salary and expenses as chief deputy inspector of oil and gas for the month of March, 1917. The auditor approved said claim up to and including March 17th, but refused to approve same for the remainder of said month for the reason that the duties pertaining to the office held by relator had been, by chapter 207, Session Laws 1917, p. 385, transferred to the oil and gas department thereby established under the jurisdiction and supervision of the Corporation Commission. Plaintiff had been appointed chief deputy inspector of oil and gas wells by the chief mine inspector and performed the services and incurred the expenses for which claim was filed. It is admitted that the claim had been duly approved by the chief mine inspector, and that there were sufficient funds in the hands of the state treasurer for the payment of same. Judgment was for defendant and plaintiff brings error.

It is first urged that relator is not an officer whose term, duties, and compensation are within the protection of the Constitution, but that he is an employe without a term, and therefore has no such right in the sub-

ject-matter of the legislation referred to as would entitle him to question the constitutionality thereof; and, further, that even if he be an officer he has no property rights in the office, nor to the compensation attached thereto, and therefore cannot assail the validity of such legislation.

Article 6, § 25, Williams' Constitution, is as follows:

"The office of chief inspector of mines, oil, and gas is hereby created, and the incumbent of said office shall be known as chief mine inspector. * * * The chief mine inspector shall perform the duties, take the oath, and execute the bond prescribed by the Legislature."

Article 6, § 26, is as follows:

"The Legislature shall create mining districts and provide for the appointment or election of assistant inspectors therein, who shall be under the general control of the chief mine inspector, and the Legislature shall define their qualifications and duties and fix their compensation."

Section 13 of the schedule, among other things, provides:

"* * * The chief mine inspector shall also perform the duties required by laws of the territory of Oklahoma of the territorial oil inspector until otherwise provided by law."

Article 6, § 25, creates the office of chief mine inspector, and this office is embedded in the Constitution, but the duties to be performed by that officer are to be prescribed by the Legislature.

Article 6, § 26, commands the Legislature to create mining districts and provide for the appointment or election of assistant inspectors therein, and declares that said assistant inspectors shall be under the control of the chief mine inspector, and requires the Legislature to define their qualifications and duties and to fix the compensation which they are to receive, and section 13 of the schedule imposes upon the chief mine inspector the performance of the duties delegated to the territorial oil inspector at the time the Constitution was adopted.

Pursuant to the mandate of article 6, § 26, the Legislature of the state at its first session, chapter 54, Session Laws 1907-08, p. 521, and in article 2 of said chapter prescribed the duties and qualifications of the chief mine inspector, created three mining districts and provided for the election therein of assistant inspectors (sections 3949, 3950, Rev. Laws 1910), and prescribed their qualifications and the compensation to be received by them. Relator was not one of these,

but his office was created by chapter 207, Laws 1913, p. 459.

The office held by relator, to wit, chief deputy inspector of oil and gas wells, is not named in the Constitution, neither is any provision made therein for the creation of such office, and therefore the office, when created, was purely a creation of the statute, and it was within the power of the Legislature to increase or diminish the duties of such office and the compensation attached thereto. And the Legislature could, in its discretion, abolish the office at will or transfer all, or any portion, of the duties thereof to some other office or department if not prohibited by the Constitution.

In a number of cases it has been held that county, deputy county, or other municipal officials are not officers with a term, but are employes without a term. Board of Com'rs v. Hart, 29 Okla. 693, 119 Pac. 132, 37 L. R. A. (N. S.) 388; State ex rel. Reardon v. Harper, 33 Okla. 572, 123 Pac. 1038; State ex rel. Matlack v. Oklahoma City, 38 Okla. 349, 134 Pac. 58; Town of Luther v. Crossley, 45 Okla. 611, 146 Pac. 583. And it has been held that the duties of such officers may be diminished or entirely taken away at the will of the power which created them. Town of Luther v. Crossley, supra.

In Insurance Co. of North America v. Welch, 49 Okla. 620, 154 Pac. 48, it was held to be within the power of the Legislature to create an insurance board and delegate thereto the duty of seeing to the execution of the laws of the state then in force, or that may be thereafter passed in relation to insurance and insurance companies doing business in this state. This was so because the Constitution did not define the duties of the insurance commissioner, but established an insurance department and left to the Legislature the detail of prescribing the duties to be performed by the insurance commissioner. The distinction between that case and this lies in the fact that the insurance board created was a part of the insurance department, and that the duties delegated to the insurance board thus created were not transferred to another department of the state government. The decision is in point, however, upon the principle that the Legislature may define the duties attached to an office where such authority is delegated by the Constitution.

The law must necessarily be so because officers are nothing more than the agents of the state for effectuating the public purposes for which the state was created, and the power to create or abolish offices was intended to further the public convenience and necessity, and so too are the duties which are delegated to them. If the power of the Legislature, in the absence of constitutional prohibition, to abolish an office when the necessity therefor has ceased to exist be denied, progress and improvement in government according to the needs of the times would be arrested, and the state would inevitably become a great pension establishment upon which to quarter a host of sinecures. It would be impossible to arrange the different branches of state government in accordance with the needs thereof except by the slow and cumbersome method of constitutional amendment, and no government could be competent, or perfect, in the absence of a power to enact and repeal laws and to create change or discontinue the agents through whom the execution of these laws is secured. Such power is and will be indispensable for the preservation of the body politic and the safety of the community itself. Butler v. Commonwealth, 10 How. 402, 13 L. Ed. 472; Taylor v. Beckham, 178 U. S. 548, 20 Sup. Ct. 890, 1009, 44 L. Ed. 1187.

It was therefore within the power of the Legislature to increase or diminish the duties of the office held by relator, or to transfer the duties thereof to some other officer, unless prohibited by the Constitution, even though such transfer had the effect of abolishing said office. Mechem on Public Officers, §§ 463-465.

The question whether it was within the power of the Legislature to denude the office of chief mine inspector of the duties transferred by the act is a question in which relator has no interest, and is therefore not presented for our consideration and we express no opinion thereon. It is an established rule that the Supreme Court will not pass upon the constitutionality of an act of the Legislature nor any of its provisions, until there is presented a proper case in which it is made to appear that the person complaining has an interest in the very question urged, and would be entitled to the benefits of any decree that might be rendered on the decision of such question or would be subject to the burdens thereof. Insurance Co. of North America v. Welch, 49 Okla. 620, 154 Pac. 48; Black v. Geissler, 58 Okla. 335, 159 Pac. 1124. Therefore, when it is determined that the constitutional requirements as to the passage of the act have been complied with, and the power of the Legislature to abolish the office held by relator has been sustained, his interest in the subject-matter of the legislation has been determined.

In Black et al. v. Geissler et al., 58 Okla. 335, 159 Pac. 1124, it was held that plaintiff could not urge constitutional objections to chapter 24, Session Laws 1916, p. 33, commonly known as the registration law, because it did not appear that he would be affected in any way by the act, except that he would be required to pay the tax therein provided for, and it was further held that an efficient remedy was provided by statute to protect his interest as a taxpayer. In Wiley v. Sinkler, 179 U. S. 58, 21 Sup. Ct. 17, 45 L. Ed. 84, the Supreme Court of the United States held that plaintiff could not question the validity of a law requiring registration of voters because it did not appear that plaintiff was affected thereby.

It has also been held that a white man, upon trial for an alleged crime, cannot question the constitutionality of an act because it excludes negroes from the jury.. Commonwealth v. Wright, 79 Ky. 22, 42 Am. Rep. 203. And also that a man cannot raise the objection that under the law women are excluded from service as jurors. McKinney v. State, 3 Wyo. 719, 30 Pac. 293, 16 L. R. A. 710. And it is further held that a white man cannot raise the objection that a law is invalid because it excludes negroes from equal benefits in the public schools in the state. Marshall v. Donovan, 10 Bush (Ky.) 681. And so a plaintiff in a divorce suit who has not resided within the state the length of time prescribed by statute regulating action for divorce cannot challenge the constitutionality thereof. Pugh v. Pugh, 25 S. D. 7, 124 N. W. 959, 32 L. R. A. (N. S.) 954. Neither can a sheriff object to the constitutionality of an act fixing the fees of certain officials on the ground that it is local and special, where the provisions as to the sheriff are complete within themselves, and capable of being executed independently of the provisions relating to other officers. Henderson v. State of Indiana ex rel. Stout, 137 Ind. 552, 36 N. E. 257, 24 L. R. A. 469.

Legislation has frequently been sustained in respect of corporations even though held invalid as to natural persons, or corporations of different classes. Tullis v. Lake Erie & Western R. R. Co., 175 U. S. 348, 20 Sup. Ct. 136, 44 L. Ed. 192; Pittsburg, C., C. & St. L. R. Co. v. Montgomery, 152 Ind. 1, 49 N. E. 582, 69 L. R. A. 875, 71 Am. St. Rep. 301; Leep v. St. Louis, I. M. & S. R. Co., 58 Ark. 407, 25 S. W. 75, 23 L. R. A. 264, 41 Am. St. Rep. 109; St. Louis, I. M. & S. R. Co. v. Paul, 64 Ark. 83, 40 S. W. 705, 37 L. R. A. 504, 62 Am. St. Rep. 154. For further illustrations of the extent and application of the rule the following cases

may be examined: McLaury v. Watelsky, 39 Tex. Civ. App. 394, 87 S. W. 1045; Cronin v. Adams, 192 U. S. 108, 24 Sup. Ct. 219, 28 L. Ed. 365; Fidelity & Cas. Co. v. Freeman, 109 Fed. 847, 48 C. C. A. 692, 54 L. R. A. 680; State ex rel. People's F. Ins. Co. v. Michel, 125 La. 55, 51 South. 66; Com. v. Porter, 113 Ky. 575, 68 S. W. 621; McCully v. Chicago, B. & Q. R. Co., 212 Mo. 1, 110 S. W. 711; State v. Rose, 40 Mont. 66, 105 Pac. 82; People ex rel. Kenny v. Kolks, 89 App. Div. 171, 85 N. Y. Supp. 1100; Sweeney v. Webb, 33 Tex. Civ. App. 324, 76 S. W. 766; State ex rel. Kellogg v. Currens, 111 Wis. 431, 87 N. W. 561, 56 L. R. A. 252; State v. Barr, 78 Vt. 97, 62 Atl. 43; McClelland v. Denver, 36 Colo. 486, 86 Pac. 126, 10 Ann. Cas. 1014; Ritz v. Lightston, 10 Cal. App. 685, 103 Pac. 363.

The legislation is assailed as being unconstitutional on the ground and for the reason that it is in conflict with, and in direct violation of, article 5, §57, Williams' Constitution, which provides:

"* * * And no law shall be revived, amended, or the provisions thereof extended or conferred, by reference to its title only; but so much thereof as is revived, amended, extended, or conferred shall be re-enacted and published at length."

The act is said to be in conflict with this provision of the Constitution because the amendatory provisions of chapter 96, Session Laws 1915, which relator says are amended by it, are not re-enacted and published at length as provided in said clause of the Constitution. Said chapter 207, Session Laws 1917, does not purport to amend any other chapter or section, but on its face purports to be a complete act in itself providing for the creation of an oil and gas department under the jurisdiction of the Corporation Commission for the appointment of a chief oil and gas conservation agent, conferring exclusive jurisdiction on the Corporation Commission in reference to the conservation of oil and gas and the inspection of gasoline and oil, the product of crude petroleum, and repeals all acts or parts of acts in conflict therewith and declares an emergency.

The provision of the Constitution relied upon was intended to prevent the mischief which arose by the enactment of amendatory statutes so blind in terms that the legislators themselves were sometimes deceived in regard to their effect, and the public, from the difficulty in making the necessary examination and comparison, failed to become apprised of the changes made in the laws by the enactment of such legislation. A familiar illustration was the passage of an act

amending a prior act which purported only to insert certain words, or to substitute a phrase of another by referring thereto without re-enacting the section affected. Such constitutional provisions have always received a liberal construction with the view of preventing the evil at which they were aimed, but when the statute in itself appears to be original, and in itself intelligible and complete, and does not either in its title or in the body thereof appear to be revisory or amendatory of any law, it is not within the inhibition of section 57, art. 5, even though such act seeks to effectuate the power conferred by referring to, and requiring, the officers thereby created to proceed in the performance of their duties in accordance with the general laws previously enacted. City of Pond Creek v. Haskell, 21 Okla. 711, 97 Pac. 338; No. 9182, In re Application of John W. Lee, 64 Okla. 310, 168 Pac. 53; 1 Lewis' Sutherland, Stat. Const. § 243.

To hold otherwise would require that every statute, local or general, must contain within itself every detail necessary for its complete execution, and the Legislature, when it desired to adopt the procedure or some matter of detail contained in another statute, could not, by suitable reference thereto, make the law effective, but must embrace in the proposed legislation, and actually insert therein, every provision necessary for a complete working law in itself without referring to any other provision of the statute. The mischief produced by such construction would lead to innumerable repetitions of the laws on the statute books, and would render them too bulky and cumbersome for any reasonable use, and, in addition, would render them confusing and unintelligible almost beyond the power of the mind to conceive.

A very full discussion of this question, with copious citation of authorities and comment thereon, sustaining the view here expressed is found in the case of City of Pond Creek et al. v. Haskell, Governor, et al., 21 Okla. 711, 97 Pac. 338.

The judgment is affirmed.

All the Justices concur.