LOVE et al. v. BOYLE, Chief Mine Inspector of Oklahoma.

No. 9858—Opinion Filed Feb. 18, 1919.

Rehearing Denied May 13, 1919.

(180 Pac. 705.)

(Syllabus.)

1. Oil and Gas—Conservation—Enforcement of Laws—Powers of Chief Mine Inspector.

The .Constitution does not expressly or by necessary implication confer on the chief mine inspector jurisdiction to enforce the laws enacted (chapters 25 and 197, Sess. Laws 1915) to conserve and prevent the waste of crude oil or natural gas, and to regulate the equitable taking of same from a common source of supply, and the equitable purchase of natural gas by common purchasers thereof, or impose any duties in relation thereto to be performed exclusively by that officer.

2. Same.

The Constitution does not expressly or by necessary implication confer on the chief mine inspector jurisdiction to enforce the laws enacted (chapter 53, art. 3, §§ 4319 to 4331, R. L. 1910) to regulate the use and preservation of natural gas, drilling wells for .oil and gas, piping, storage, or purchase thereof, or to superintend the plugging of dry or abandoned oil or gas wells, or impose any duties in relation thereto to be performed exclusively by that officer. The Constitution neither expressly nor by necessary implication. imposes any limitation on the power of the Legislature to transfer to some other officer or department any jurisdiction conferred or duty imposed by statute on the chief mine inspector in relation thereto.

3. Same.

Article 25, § 13 (Williams, § 377), of the schedule to the Constitution imposed the duties of territorial oil inspector on the chief mine inspector only until otherwise provided by law. There is no express or necessarily implied constitutional limitation on the power of the Legislature to take from the chief mine inspector and transfer to some other officer or department the jurisdiction and duty, under chapter 53, art. 4, §§ 4332 to 4359, R. L. 1910, as amended by chapter 96, Session Laws 1915. p. 149, to inspect oils and other liquid products of petroleum known as burning oil or kerosene and gasoline manufactured or offered

for sale in the state for illuminating, heating, or power purposes.

Hardy, C. J., and Kane and Sharp, JJ., dissenting.

Error from District Court, Oklahoma County; Jno. W. Hayson, Judge.

Action for injunction by Ed Boyle, Chief Mine Inspector of Oklahoma, against J. E. Love and others, as the Corporation Commission of the State of Oklahoma, and A. L. Walker, as Chief Conservation Agent. Demurrer to petition overruled, and judgment for plaintiff, and defendants bring error. Reversed and remanded, with instructions to sustain demurrer and dismiss the action.

S. P. Freeling, Atty. Gen., Hunter L. Johnson, Asst. Atty. Gen., and Paul A. Walker, for the Corporation Commission.

Burns & Toney, for defendant in error.

MILEY, J. The questions that require our consideration and determination in this case are whether the authority and duties in reference to the inspection of oils and liquid products of petroleum, manufactured or offered for sale in this state, for illuminating, heating, and power purposes, the conservation of oil and gas, drilling and operating oil and gas wells, and plugging abandoned wells, appertain to the oil and gas department created, and inspectors appointed, pursuant to chapter 207, Session Laws 1917, under the jurisdiction and supervision of the Corporation Commission, or to the office of chief inspector of mines, oil and gas, created by the Constitution (section 25, art. 6, Williams', § 174), the incumbent of which is known as chief mine inspector.

Asserting that such authority and jurisdiction belong to and the duties thereof devolve solely upon his office, the defendant in error, being the duly elected and qualified chief mine inspector, as plaintiff below, brought this action, alleging that the plaintiffs in error, defendants below, who were respectively the duly elected, qualified, and acting Corporation Commissioners, and the duly appointed, acting, and qualified chief oil and gas conservation agent, in charge of the oil and gas department of the commission, together with their numerous servants, agents, assistants, and employes, whose names were to him unknown, were unlawfully assuming to exercise jurisdiction and authority in the premises, and performing duties in relation thereto, and collecting fees prescribed by law, and interfering with and hindering the plaintiff and his deputies and assistants in the discharge of their du-

ties, and prayed that the defendants and their said agents, servants and employes be enjoined and restrained from so doing. The defendants demurred to the petition, the demurrer was overruled, and, the defendants declining to plead further, a final judgment was rendered against them, from which they have appealed to this court.

The death of plaintiff in error, J. E. Love having been suggested, and the appointment of plaintiff in error A. L. Walker as his successor, and of a successor to A. L. Walker as chief oil and gas conservation agent having been made known to the court, by agreement an order has been made for the substitution of parties.

The matter of conservation of oil and gas, drilling and operating oil and gas wells, plugging abandoned wells, the inspection of oils and other liquid products of petroleum, etc., and the fees therefor, and the duties of various officers in relation thereto, are regulated by several statutes of the state enacted from time to time by the Legislature.

In the order of enactment, the first of these acts is that of the legislative assembly of the territory of Oklahoma, being chapter 17, Session Laws 1903, pp. 180 to 195, entitled, "An act to provide for the inspection of oils, the appointment and compensation of inspectors, and for other purposes." This act as amended by article 20, § 2, Williams', § 345, of the Constitution, was by virtue of the Schedule to the Constitution (article 25, § 2, Williams', § 366) brought over and extended in force in the state. The office of territorial inspector of oils provided for in that act was not continued after statehood, and the duties imposed on that officer were, by virtue of the Schedule to the Constitution (article 25, § 13, Williams', § 377) to be performed by the chief mine inspector until otherwise provided by law. A revision of this act was incorporated in the Revised Laws of 1910 as chapter 53, art. 4, §§ 4332 to 4359 thereof. Certain sections of the statute were amended by chapter 96, Session Laws 1915, pp. 149 to 152. The revised statute as amended provides that all oil and liquid products of petroleum known as burning oil or kerosene and gasoline, by whatever name called, which may be or can be used for illuminating, heating, or power purposes, manufactured in this state, or brought into it, shall be inspected by an authorized inspector of this state before the same are consumed, used, or sold, or offered to be sold or disposed of to merchants, consumers, or other persons within the state. The state mine inspector was made the ex-

officio gauger of liquids used for illuminating, heating, or power purposes, and authorized to appoint and assign for duty deputy oil inspectors at any point where there are located tank stations or refineries. The law further provides the manner of testing oils and other of said liquids, for the approval or condemnation thereof after test, for branding the result of the actual test on the package, barrel, or casks containing the same, and of such as are found to be unsafe and rejected. The act prohibits the sale of uninspected or condemned oils, prescribes penalties for hindering inspection, prescribes the fees to be charged for inspection and the amount thereof to be retained by the deputy inspector; provides ffor records to be kept by the inspectors and reports thereof to be made to the chief mine inspector, and for annual reports by the chief mine inspector to the Governor; and provides penalties for misconduct of inspectors and for making false tests.

The next act is chapter 26, art. 2, §. 431, Session Laws 1909, which was slightly revised, and incorporated in the Revised Laws of 1910, as chapter 53, art. 3, §§ 4319 to 4331. The original was entitled, "An act to regulate the use and preservation of oil and gas and providing penalties for the violation thereof, providing for an inspector, his duties, compensation and appropriation therefor and declaring an emergency." The act as revised provides, in substance, that any well producing natural gas, in order to prevent the said gas from wasting by escape, shall immediately, after penetrating the gas-bearing rock, be shut in and confined in the well until and during such time as the gas therein shall be utilized for lights, fuel, or power purposes. The act contains other provisions designed to prevent the unnecessary use and waste of natural gas and the pollution of stock water with oil and the refuse from tanks and wells. The act further provides that all dry and abandoned oil and gas wells, in which oil or gas-bearing stratum has been found, shall be plugged in the manner therein prescribed under the supervision of the oil and gas inspector therein provided for. The chief mine inspector was authorized to appoint such deputies, possessing certain qualifications as necessary for performance of the duties required by law. It was made the duty of the chief mine inspector and his deputies to personally supervise the using and operating of natural gas and the proper observance of the laws of the state dealing with the drilling and production of oil and gas or the piping or storage or purchase or use thereof within the state. A record is required to be kept of all oil and gas wells and dry holes plugged in accordance with the provisions of the act, containing certain information to be supplied by the lessee or operator at the time the well was plugged.

The next act is chapter 25, Session Laws 1915, p. 35, entitled, "An act defining and prohibiting the waste of crude oil or petroleum, providing for the equitable taking of the same from the ground and conferring authority on the Corporation Commission, prescribing the penalty for the violation of this act and, declaring an emergency." This act prohibits the production of crude oil under such conditions as to constitute waste, defines waste, and authorizes the Corporation Commission to regulate the taking of crude oil from any common source of supply, so as to prevent the inequitable or unfair taking thereof, and to prevent discrimination in favor of one common source of supplies as against another. The act authorizes a gauge to be taken of any well under rules and regulations prescribed by the Corporation Commission. It also authorizes and directs the Commission to make and promulgate such other rules and regulations, and to employ or appoint such agents with the consent of the Governor, as may be necessary to enforce the act. The commission was further empowered to hear and determine complaints of any person with reference to the enforcement of the act, and provides for appeals from the orders of the Corporation Commission to the Supreme Court.

The next act is chapter 197, Session Laws 1915, p. 398, being entitled, "An act to conserve natural gas in the state of Oklahoma, to prevent waste thereof, providing for the equitable taking and purchase of same, conferring authority on the Corporation Commission, prescribing a penalty for violation of this act, repealing certain acts, and declaring an emergency." This act makes unlawful the production of natural gas in such manner and under such conditions as to constitute waste, defines waste, and provides that when natural gas in commercial quantities, or gas-bearing stratum known to contain natural gas in such quantities, is encountered in any well, such gas shall be confined to the original stratum until such time as the same can be produced and utilized without waste, and that all such strata shall be adequately protected from infiltrating waters. The act regulates the taking of natural gas when the supply is in excess of market demands, a common purchaser of

natural gas is defined, and such purchasers are prohibited from discriminating in favor of one producer against another, or in favor of one source of supply as against another. The Corporation Commission is given authority and power to conduct hearings, and make additional regulations for the prevention of the waste of natural gas and for the protection of oil or gas-bearing strata, and to further regulate the taking and the purchase of gas by common purchasers. The Commission, with the consent of the Governor, was also authorized to employ agents necessary to enforce the act. The act further provides that nothing therein contained shall be construed to interfere with any duties imposed by law on the chief mine inspector of the state, or his deputies.

The next act to be considered is chapter 207, Session Laws 1917, p. 385, entitled. "An act providing for the creation of an oil and gas department under the jurisdiction of the Corporation Commission, authorizing the Corporation Commission to appoint a chief oil and gas conservation agent, and conferring exclusive jurisdiction on the Corporation Commission in reference to the conservation of oil and gas, and the inspection of gasoline and oil, the product of crude petroleum, and repealing all acts or parts of acts in conflict therewith, and declaring an emergency." Under this act, the jurisdiction and duty to inspect oils and liquid products of petroleum under chapter 53, art. 4, R. L. 1910, as amended by chapter 96, Session Laws 1915, p. 149, was taken from the chief mine inspector and deputies appointed by him and conferred upon the Corporation Commission. The commission was authorized, with the approval of the Governor, to appoint oil inspectors to perform such duties, who are authorized to receive the compensation provided by law for the inspection of oils and liquids. That act further empowers and authorizes the Corporation Commission to create and establish an oil and gas department under their jurisdiction and supervision, and, with the approval and consent of the Governor, to appoint a chief oil and gas conservation agent, who shall have charge of such oil and gas department. All authority theretofore conferred upon other departments in reference to the conservation of oil and gas and the control and operation of oil and gas wells, and the construction and regulation of oil and gas pipe lines, was conferred exclusively upon the Corporation Commission. The authority and duty of the chief mine inspector and his deputies to supervise the plugging of dry and abandoned oil and gas wells,

under article 3, c. 53, Rev. Laws 1910, was taken from that department, and exclusive jurisdiction thereof was conferred upon the conservation agents of the Corporation Commission under orders and regulations for plugging such wells to be made by the Corporation Commission, after a general hearing thereon as prescribed by law.

All of the acts of the plaintiffs in error and their agents, servants, and employes, of which the defendant in error complains, and which he seeks to prevent them from performing, are those committed in the discharge of the duties either originally imposed on the Corporation Commission and its agents under chapters 25 and 197 of Session Laws 1915, or originally imposed on the chief mine inspector and his deputies under chapter 53, art. 3, as amended, and chapter 53, art. 4, Rev. Laws 1910, and subsequently transferred by chapter 207, Sess. Laws 1917, to the Corporation Commission. And all the authority and jurisdiction which the chief mine inspector claims to possess in the premises was either not granted that officer under the acts in question, or else has been expressly taken from him by the act of 1917 and vested in the officers of whose conduct he complains.

Counsel for defendants in error concede that if these several acts are valid, he has no ground for complaint. But it is contended that chapters 25 and 197, Sess. Laws 1915, in so far as they confer jurisdiction and authority upon the Corporation Commission and impose certain duties on that body and agents selected by it, and that chapter 207, Sess. Laws 1917, in so far as such jurisdiction and authority are continued in the commission, and also transfers to the commission the duties theretofore prescribed to be performed by the chief mine inspector and his deputies under chapter 53, art. 3, and chapter 53, art. 4, Rev. Laws 1910, as amended, are invalid, in that the authority and jurisdiction so conferred and the duties so imposed on the Corporation Commission belong, under the Constitution, exclusively to the office of chief mine inspector, and that the Legislature was without power to lodge them elsewhere.

In considering the validity of the acts in question, it must be borne in mind that the legislative authority of the state is vested in the Legislature and the direct action of the people under the reserved powers of the initiative and referendum. Const. art. 5, § 1, Williams', § 51. And that the authority of the Legislature extends to all rightful subjects of legislation. Const. art. 5, §

.36; Williams', § 98. The creation of offices and prescribing the duties thereof is a legislative function to be exercised subject only to constitutional limitations by the Legislature. 29 Cyc. 1368; 23 Am. & Eng. Ency. of Law, 328.

While certain offices in the executive department of the government are created by the Constitution, yet the power of the Legislature to provide by law for additional offices in that department is distinctly recognized in that instrument, and while the Constitution designates certain duties to be performed by some of the executive officers created by that instrument, yet the power of the Legislature to prescribe by law additional duties to be performed by such officers and to prescribe all of the duties where none are designated in the Constitution is also distinctly recognized in that instrument. Article 6, § 1, Williams', § 150. Furthermore, while in the proper exercise of the judicial function of construing and declaring the law, it is the duty of the courts, in case of conflict between the Constitution and an act of the Legislature, to follow the Constitution as the supreme law, yet we must never be unmindful of the well-established rule that legislative enactments must be upheld and followed by the courts unless they are clearly violative of some provision, either expressed or necessarily implied, of the organic law. It is not on slight implication and vague conjecture that the Legislature is to be pronounced to have transcended its powers, and its acts to be considered as void. The opposition between the Constitution and the statute should be such that the judge feels a clear and strong conviction of their incompatibility with each other. Anderson v. Ritterbusch, 22 Okla. 761, 98 Pac. 1002.

Keeping these principles in mind, let us examine the provisions of the Constitution, which it is claimed limit the power of the Legislature in the premises. Article 6, § 1, Williams', § 150, of the Constitution, provides that the "executive authority of the state shall be vested" in certain officers therein named, among whom is chief mine inspector, and "other officers provided by law and this Constitution, each of whom shall keep his office and public records, books and papers at the seat of government and shall perform such duties as may be designated in this Constitution or prescribed by law."

The only other provisions of the Constitution relating to this office are article 6, § 25, Williams', § 174, and article 6, § 26, Williams', § 175, as follows:

(174) Sec. 25. "The office of chief in-spector of mines, oil, and gas is hereby created, and the incumbent of said office shall be known as the chief mine inspector. The term of said office shall be four years, and no person shall be elected to said office unless he shall have had eight years' actual experience as a practical miner, and such other qualifications as may be prescribed by the Legislature. The chief mine inspector shall perform the duties, take the oath, and execute the bond prescribed by the Legislature."

(175) Sec. 26. "The Legislature shall create mining districts and provide for the appointment or election of assistant inspectors therein, who shall be under the general control of the chief mine inspector, and the Legislature shall define their qualifications and duties and fix their compensation."

In the schedule to the Constitution (article 25) enacted by the constitutional convention, "in order that no inconvenience may arise by reason of a change from the forms of government now existing in the Indian Territory and the territory of Oklahoma," it is declared, among other things:

"The act of Congress entitled, 'An act for the protection of the lives of miners in the territories,' approved March 3, 1891, and the act of Congress entitled, 'An act to amend an act entitled, "An act for the protection of the lives of miners in the territories," ' approved July 1, 1902, are hereby extended to and over the state of Oklahoma until otherwise provided by law: Provided, that the words, 'Governor of the State' are hereby substituted for the words, 'Governor of such organized territories,' and for the words, 'Secretary of Interior,' wherever the same appear in said acts, and the words, 'chief mine inspector,' for the words, 'mine inspector,' wherever the same appear in said acts. The chief mine inspector shall also perform the duties required by laws of the territory of Oklahoma of the territorial oil inspector until otherwise provided by law." Article 25, § 13, Williams', § 377.

It will be noted that while the Constitution creates the office of chief inspector of mines, oil and gas, it nowhere defines the authority or jurisdiction of the office, or prescribes the duties of the incumbent thereof. It only prescribes the term, and also one of the qualifications of the incumbent, to which the Legislature is authorized to add others. As remarked by this court in Insurance Co. of North America v. Welch, 49 Okla. 620, 154 Pac. 48, Ann. Cas. 1918E, 471, no duties are prescribed for this office by the Constitution, leaving the Legislature to prescribe what duties shall be performed by such officer. However, it is argued that some duties attached to the office must necessarily arise by implication, the nature of which is indicated by the title thereof. It is no doubt true that

it was the intention that the chief mine inspector should render some service to the state, and that the office should not be a mere sinecure. But it is equally true that it was left to the wisdom of the Legislature to define and regulate those duties. There would be some force in the argument that, construing the several provisions of the Constitution and the Schedule together, and it being required that the chief mine inspector should be an experienced practical miner, it was contemplated that he should be charged with the duty of inspecting mines and of securing observance of those laws enacted for the purpose of promoting the safety of miners and those engaged in mining operations. We are not here concerned with such duties and the power of the Legislature with reference thereto. These highly important duties have not been changed or in the least affected by the legislation assailed. This legislation relates to the prevention of the waste of two of the valuable natural resources of the state, and the protection of the public against the sale of unsafe and dangerous refined oils.

Whatever may be inferred from the name of the office as to the nature of the duties thereof, it is quite clear that the duties imposed on the Corporation Commission under chapters 25 and 197, Session Laws 1915, having reference to the prevention of the waste of oil and gas and to regulate the equitable taking or purchase of same do not fall within the scope of the duties that may reasonably be inferred from the name "chief inspector of mines, oil and gas." The same may be said of the duties originally imposed on the chief mine inspector and his deputies under chapter 53, art. 3, R. L. 1910, to supervise the using and operating of natural gas and the observance of the laws dealing with the drilling and production of oil and gas, the piping, storage, purchase, or use thereof, and to superintend the plugging of dry and abandoned wells, and which duties were subsequently transferred to the oil and gas department of the Corporation Commission by the act of 1917.

It might be argued with some reason that the duty of inspecting oils and liquid products of petroleum or other bituminous substances, which may be, or can be, used for illuminating, heating, or power purposes, would fall within the scope of duties which could be properly inferred from the name of the office. But it is quite evident that the constitutional convention did not think that such duties would necessarily be implied. As before stated, there was a statute of the territory of Oklahoma, providing for such inspection, the inspection being made by an officer known as the territorial oil inspector. Chapter 17, S. L. 1903, p. 180. This statute was brought over and extended in force in the state by the schedule (article 25, § 2, Williams' § 366, of the Constitution), except that the standard for certain tests of kerosene oil for illuminating purposes provided in the act was changed by article 20, § 2, Williams', § 345, of the Constitution. No provision was made for continuing the office of territorial oil inspector after the erection of the state, and had it been intended or thought that the duties thereof under the act would necessarily devolve on the chief mine inspector, it would not have been further provided in the schedule that the chief mine inspector should perform the duties required by the laws of the territory of Oklahoma of the territorial oil inspector until otherwise provided by law. Written Constitutions are the product of deliberate thought. Trapp v. Cook Construction Co., 24 Okla. 854, 105 Pac. 667. It is apparent that the deliberate thought of the authors of the Constitution was that the duty of inspecting such oils was not necessarily a part of the duties of the office of inspector of mines, oil and gas. Such being the construction of the section creating the office of the creators thereof, we do not feel authorized to construe it otherwise.

Notwithstanding the Constitution prescribes no duties to be performed by the chief mine inspector with relation to oil and gas, and that instrument expressly leaves it to the Legislature to prescribe such duties, counsel for defendant in error contend that such duties when prescribed "by the Legislature pursuant to constitutional mandate become constitutional; and, while they may be altered or added to by the Legislature, such additions or alterations must at all times relate to the constitutional officer, and cannot be transferred to another officer, created by the Legislature, and such act (transferring such duties) is unconstitutional and void."

In the argument in support of that proposition, several authorities are cited. It is unnecessary to review all these cases. The same authorities were cited in Insurance Co. of North America v. Welch, supra, and the purport thereof was stated in the opinion in that case as follows:

"Where an office is created by or imbedded in the Constitution, and the duties thereof are defined by that instrument, or where the office antedated the Constitution, and its duties were enumerated by the statute at the time the Constitution was adopted, or where the office owes its origin to the common law, and had certain well-recognized duties at-

tached thereto, or inherently connected therewith, or forming a substantial part thereof, it was not within the power of the Legislature to transfer such duties to an office of its own creation or to an officer selected and chosen in a manner different from that by which the constitutional officer was named."

If it be assumed that those authorities announce sound principles, they can have no controlling application to this case. The duties of the chief mine inspector with reference to oil and gas are not defined in the Constitution. The office did not antedate the Constitution, and hence no duties thereof were enumerated by statute at the time the Constitution was adopted. The office was unknown to the common law, and there were no certain well-recognized duties attached thereto, or inherently connected therewith, or which formed a substantial part thereof. There had been no legislation on the subject of the conservation of oil and gas, or regulating the drilling of oil and gas wells, or plugging abandoned wells at the time of the adoption of the Constitution. There had then been legislation only on the subject of inspecting oils and liquids manufactured or sold for. illuminating, heating, and power purposes, and it was distinctly provided that the Chief Mine Inspector should perform the duties relative thereto only until otherwise provided by law.

Counsel for defendant in error seem to rely largely on Trapp v. Cook Construction Co., supra, in support of their contention, but we do not think that case does so. The Constitution created a board of agriculture, and among other things provided that it should be the board of regents of all state agricultural and mechanical colleges, and should discharge such other duties as might be provided by law. The duties of the board of regents of the State Agricultural and Mechanical College were defined in the statutes of the territory of Oklahoma. After the adoption of the Constitution and the erection of the state, the Legislature created a state board of public affairs, and transferred to that board certain duties that had theretofore been performed by the board of agriculture under the statutes defining the duties of the board of regents of the Agricultural and Mechanical College. It was held that these duties were by the Constitution vested in the board of agriculture, and the act. creating the state board of public affairs, in so far as the same were transferred to that board, was void. For the purpose of this case, it is not necessary, and we do not question the correctness of the conclusion reached in that case. The two cases are not parallel. If, instead of providing that the chief

mine inspector should perform the duties prescribed by the Legislature, the Constitution had provided that the chief mine inspector should perform the duties of the territorial oil inspector and such other duties as might be prescribed by the Legislature, the decision in the former case would be in point.

None of the authorities cited by counsel appear to us to sustain the proposition stated by them, nor do we think that the proposition is supported by reason. To hold that, because one Legislature has seen fit to prescribe certain duties to be performed by the incumbent of an office created by the Constitution, such duties cannot subsequently be taken from that officer and transferred to some other officer would be to allow one legislative body to bind the action of all future Legislatures, which, to say the least of it, would be a novel way of amending the Constitution.

We think this case falls within the rule that although. the Legislature may not take from an office. created by the Constitution powers conferred by that instrument, or those which have immemorially been attached thereto, it is not prevented from conferring upon such office and taking therefrom new powers which were not conferred by the Constitution, or which have not been traditionally associated with the office. 29 Cyc. 1431; People v. Squires, 14 Cal. 13; Fortune v. Buncombe Co., 140 N. C. 322, 52 S. E. 950; State v. Anson, 132 Wis. 461, 112 N. W. 475.

In our judgment there is nothing in the Constitution which required that the duties imposed under chapters 25 and 197, Session Laws 1915, on the Corporation Commission, should be performed by the chief mine inspector, and nothing therein which limits the power of the Legislature to transfer the other duties originally imposed by statute on the office of inspector of mines, oil and gas, to some other agency of the state. Having reached that conclusion, it is not necessary to consider the question as to whether those duties can properly be imposed upon the Corporation Commission, since the defendant in error has no such interest in the question as will permit him to assail the constitutionality of the acts in that respect. State ex rel. Breene v. Howard, 67 Okla. 289, 171 Pac. 30.

Also, in view of the conclusion reached as to the constitutionality of the acts in question, it is unnecessary to consider the other questions raised by the plaintiffs in error, and we express no opinion thereon.

The judgment of the trial court is accord-

ingly reversed, and the cause remanded, with instructions to sustain the demurrer and dismiss the action.

PER CURIAM. The opinion in the above-entitled cause was prepared by our former Associate, Mr. Justice Miley, prior to the expiration of his term of office as a justice of this court. Since the expiration of his term, upon due consideration, the opinion prepared by him has been approved and adopted as the opinion of the court, and is now handed down as such.

All the Justices concur, except HARDY, C. J., and KANE and SHARP, JJ., who dissent, and HARRISON, J., not participating.