HIGHWAY INSURANCE UNDERWRITERS et al. v. NICHOLS.

No. 35279.    Feb. 10, 1953.

Rehearing Denied March 31, 1953.

*255 P. 2d 263.*

Draper Grigsby, Oklahoma City, and Anglin, Stevenson & Huser, Holdenville, for plaintiffs in error.

Bishop & Driscoll, Seminole, and Hugh M. Sandlin, Holdenville, for defendant in error.

BLACKBIRD, J. This is an action brought by Allen G. Nichols, administrator of the estate of Claud Hester, deceased, against Marion W. Middleton, doing business as Middleton Transfer, and the Highway Insurance Underwriters to recover damages for the alleged wrongful death of the deceased, Claud Hester.

It is alleged in plaintiff's petition that deceased was instantly killed when a pickup truck, which he was driving, collided with a transport truck loaded with hay and driven by Leslie L. Vandergriff.

The collision occurred on the evening of April 7, 1943, at a curve on Highway 68 about four and one-half miles from Holdenville, Oklahoma.

It is alleged that the transport truck was owned by Leo Middleton, son of defendant Middleton, and that it was used by defendant Middleton in his business, and that Vandergriff was employed by him on the date of the accident to operate the truck.

It is further alleged that sometime prior to the death of Claud Hester, defendant Marion W. Middleton made application and obtained from the Corporation Commission a certificate of convenience and necessity and a permit to use and did use the highways of the state as a common carrier of freight; that in order to obtain such certificate and permit he was required to, and did file, with the Motor Carriers Division of the Corporation Commission, a public liability insurance policy executed by defendant Highway Insurance Underwriters to protect the traveling public from injuries sustained by all persons who might suffer injuries or death by reason of the negligent operation of the motor carrier. Plaintiff, in his petition, alleges the following acts of negligence:

"(a) Violation of the statute requiring a driver to drive at a careful and reasonable speed, with due regard to the traffic and other road conditions, and requiring the driver to drive at a speed that will enable him to stop within the assured clear distance ahead.

"(b) Failure to keep a lookout for approaching vehicles.

"(c) Violation of the statute in operating a truck on the highway, the bed of which was more than 72 inches wide, without clearance lights upon the projecting bed of the truck, which projec-

tion extended across the center of the paved highway."

It is further alleged by reason of having executed its liability insurance policy, defendant Highway Insurance Underwriters became obligated and bound to pay all damages sustained to the extent of $5,000 because of injury to or death of any person caused by the negligent operation of the truck owned by Leo Middleton, while in the service of and operated by Marion W. Middleton as a common carrier of freight. A copy of the policy is attached to the petition as an exhibit and made a part thereof. It covers any motor vehicle used by Marion W. Middleton in the operation of his business as a common carrier of freight whether such motor vehicle is owned by him or not. Under the terms of the policy liability for injury or death to any one person is limited to $5,000.

As to damages sustained, plaintiff's petition stated that the estate was obligated to pay funeral expenses of deceased in the sum of $267.75. It is further alleged that deceased's earning capacity prior to his death was about $1,000 per year. It is stipulated that the life expectancy of deceased under the American Table fo Mortality Rate would be 24 years. Plaintiff prayed judgment against both defendants in the sum of $20,000.

Defendants filed separate answers to plaintiff's petition. In his answer, Marion W. Middleton specifically denied that Vandergriff, driver of the transport truck, was in any manner guilty of negligence, and affirmatively alleged that the collision occurred solely because of primary negligence of deceased. It is alleged that the collision occurred at the foot of a hill on a curve; that said Claud Hester drove a 1940 Chevrolet pickup truck down the hill going in a southeasterly direction at a high, excessive and dangerous rate of speed, and drove his automobile over across the center of the highway on the wrong side preparatory to cutting a curve at the foot of the hill, and as a result thereof ran into and against the truck driven in a northwest direction by Lester Vandergriff and was killed. He further alleged that the relation of employer and employee did not exist between defendant Marion W. Middleton and Vandergriff at the time the accident occurred. He further alleged that at the time of the collision deceased was operating and driving the truck while under the influence of intoxicating liquor. He further pleads unavoidable accident and contributory negligence on the part of deceased. Defendant Highway Insurance Underwriters, in its separate answer, admits that it wrote the insurance policy relied upon by plaintiff and that such policy was on file with the Corporation Commission of Oklahoma, but denied that such policy covered any equipment involved in the accident described in plaintiff's petition or that it incurred any liability arising out of such accident. For further answer, it adopted Middleton's answer.

The case was tried to a jury and at the conclusion of the evidence both defendants requested the court to direct a verdict in their favor. These requests were denied. The jury returned a general verdict in favor of plaintiff and against the defendants in the sum of $10,000. Judgment was entered in the sum of $5,000, plus interest, against the defendants jointly and in an additional sum of $5,000, plus interest, against the defendant Middleton, separately.

Only the Highway Insurance Underwriters has filed a brief in this appeal, but the defendant Middleton has been allowed, by stipulation, to adopt it as his own. Defendants rely for reversal on the allegation that the court erred in denying their request for a directed verdict. This assignment necessitates a review of the evidence.

The evidence establishes that on the 7th day of April, 1943, between 8:30 and 9 o'clock p.m., a collision occurred between a pickup truck driven by Claud Hester and a transport truck loaded

with hay and driven by Leslie Vandergriff. The collision occurred on Highway 68 on a curve about four and one-half miles from Holdenville, Oklahoma. As a result of this collision, Claud Hester, driver of the pickup truck, was instantly killed. At the time of the accident he was driving the pickup truck in a southeasterly direction. The transport truck loaded with hay was traveling in a northwesterly direction toward Holdenville.

Mollie Hester, mother of Claud Hester, testified, in substance: On the day of the collision, about 3 o'clock in the afternoon, Claud Hester came to Trousdale, Oklahoma, in Pottawatomie county, to pick her up and take her to her home in Hughes county; that they left Trousdale about 5 o'clock in the afternoon; they arrived in Holdenville about dark at which point they stopped for supper; they left Holdenville about one hour thereafter and traveled in a southeasterly direction toward her home; they met the transport truck traveling in the opposite direction. It had two headlights burning but had no side clearance lights burning on the bed of the truck. Claud Hester was driving the pickup truck and she was riding on the outside. There was a collision between the pickup truck and the other approaching truck. Something on the back of the approaching truck struck the pickup truck. Claud Hester was driving on the right side of the road at the time of the accident. She was blacked out by the impact and was afterwards picked up and taken to a hospital. This witness also testified that Claud Hester was not intoxicated while driving the pickup truck and was not drinking any that day.

Lola Hester, wife of deceased, testified to substantially the same facts as did Mollie Hester.

The driver of the transport truck testified to the contrary. He testified that at the time of the collision the clearance lights on each side of the bed of the truck he was driving were burning. He also testified that as he approached the pickup truck he dimmed his lights but that Claud Hester, driver of the pickup truck, neglected to dim his lights.

Defendants concede that the evidence offered by plaintiff was sufficient to take the case to the jury on the question as to whether the clearance lights on the transport truck driven by Vandergriff were burning, and it is also conceded that if the jury found that the clearance lights were not burning, the driver of the truck, under the statutes, 47 O.S. 1951 §148, subd. (g), paragraph 2, was guilty of negligence per se. It is further contended, however, that notwithstanding the driver of the truck might have been guilty of negligence while driving the truck without the clearance lights burning, there is a total lack of evidence to establish that such negligence was the proximate cause of the injury and that the trial court should therefore have directed a verdict in their favor.

In this connection, Vandergriff, driver of the transport truck, testified that at the time of the impact the deceased was driving the pickup truck to the left of the center of the highway; that he turned his truck to the right in order to avoid a collision and the front wheels of his truck were on the shoulder on his right hand side of the road at the time the impact occurred. He further testified that the pickup truck struck the fender of his truck and that the pickup truck kept traveling southeast and hit the bed of the truck he was driving and came to rest on the shoulder of the left side of the highway immediately behind his truck. Defendant offered the evidence of a highway patrolman who appeared at the scene of the accident shortly after it occurred and, after examining the wreck and the marks on the pavement and debris on the highway, expressed the opinion that the impact occurred to the left of the center of the pickup truck's side of the road. The body of deceased was found partly in the truck and partly out of the truck and immediately alongside of

the body and at the rear end of the pickup truck a half pint bottle, with about two inches of whisky left in it, was found lying close to the body of deceased.

It is asserted by defendants that the evidence conclusively establishes that the impact occurred to the left of the center of the pickup truck's side of the road and conclusively establishes that deceased was driving to the left of the center of the road at the time of the accident, and that therefore the fact that the clearance lights on the truck might not have been burning could not have been the proximate cause of the accident. We do not agree. The evidence is in conflict as to the exact point of the impact.. In making this contention defendants overlook the fact that the bed of the transport truck was ninety-four inches in width. The statute, supra, provides:

"Every bus or truck seventy (70") inches or more in overall width and less than thirty (30') feet in overall length shall have the following:

"(a) On the front, two (2) head lamps, one (1) at each side.

"(b) On the front two (2) Clearance lamps, one (1) at each side.***"

They also overlook the fact that both Mollie and Lola Hester, occupants of the pickup truck at the time of the accident, testified that immediately prior to the impact, deceased was driving the pickup truck on his right side of the road and something on the rear end of the transport truck driven by Vandergriff struck the pickup truck and they were knocked out.

We think the jury had a right to conclude from this evidence that the bed of the transport truck extended across the center of the highway and because of the absence of burning clearance lights, one on each side of the truck, in violation of the statute, deceased was prevented from discovering that the bed extended across the highway so as to avoid the accident, and that therefore the absence of such burning clearance lights was the proximate cause of the accident.

Ordinarily the question of proximate cause presents a question for the determination of the jury. Sheridan Oil Co. v. Wall, 187 Okla. 398, 103 P. 2d 507; Oklahoma Natural Gas Co. v. Courtney, 182 Okla. 582, 79 P. 2d 235.

The question of proximate cause only becomes a question of law for the court where the evidence together with all inferences properly deducible therefrom is insufficient to show a causal connection between the alleged negligent act and the injury. Leslie v. Hammer, 194 Okla. 535, 153 P. 2d 101. There is a conflict in the evidence as to the cause of the injury; therefore, under the above authorities, the question of the cause thereof presented an issue for determination by the jury.

Defendant further contends that there is a total lack of evidence tending to show that Vandergriff was an employee of the defendant Middleton, while driving the truck in question at the time of the accident.

In this respect defendant Middleton testified: Leo Middleton was the owner of the truck involved in the wreck; that he, defendant Middleton, was the owner of but one truck, an International, which was the only truck listed in the liability insurance policy issued by the defendant Highway Insurance Underwriters. He, however, admitted that should he use any other truck in connection with his business as a common carrier of freight, the policy would cover such truck whether owned by him or not. He stated, however, that he had never used Leo's truck in connection with his business; that Leo was working for himself and for Couch Transfer of Ada, Oklahoma; that he and Leo officed together; that there were two telephones in the office, one under the name of Middleton Transfer, which was the name under which he was operating, and the other in the name of Couch Transfer. The number of his

telephone was 1136 and the number of the Couch Transfer's telephone was 248. He further testified that on the morning of the day of the accident Duncan McArthur came to the office and asked him to haul some hay, and let him have a truck for that purpose. He told McArthur the truck belonged to Leo and Leo was not then present. Thereafter, McArthur again returned in order to see Leo about hauling the hay but Leo was still absent. Vandergriff then stated he would take the truck and haul the hay; that it would be all right with Leo for him to do so. Defendant Middleton also testified that he did not authorize Vandergriff to haul the hay; that he had no control over the truck used in hauling it; that he had never used the truck in his business; and that Leo had no permit from the Corporation Commission to use the highways of the state for the purpose of hauling freight.

Leo Middleton testified to substantially the same state of facts. He admitted that he had no permit to use the highways of the state to haul freight but said he was working for Couch Transfer of Ada; that Couch carried liability insurance which covered his trucks; and that McArthur paid him for hauling the hay and he paid Vandergriff. Incidentally, there is no evidence that Couch Transfer had any connection with the transaction.

Vandergriff testified that he was working for Leo Middleton on the day of the accident and was hauling the hay for him; that Leo paid him for his services and so far as he knew McArthur did not pay Couch Transfer anything for the use of the truck on that day. The hay was loaded near Stuart, Oklahoma, in the southeastern part of Hughes county and was to be delivered to Duncan McArthur at Holdenville, Oklahoma. No one specifically directed him to go after the hay but defendant Middleton told him he wanted the hay hauled and he went and got it; that he used Leo Middleton's truck. After the wreck he drove the truck loaded with the hay to Duncan McArthur's barn at Holdenville, but it was not unloaded until the next morning.

Plaintiff concedes and so pleads in his petition that Leo Middleton was the owner of the Chevrolet truck involved in the accident. It is contended, however, that defendant Middleton used the truck in his business and that Vandergriff was in fact employed by him in his business and that Vandergriff was in fact employed by him on that day to haul the hay. In this connection Stanford Irvin testified that he was working for defendant Middleton on the day of the accident and had been working for him for about three and one-half years prior thereto. Defendant Middleton used two trucks in operating his business, an International and the Chevrolet truck involved in this accident; that he did not know who owned the Chevrolet truck but that defendant Middleton kept it in his name; He further testified that the truck had inscribed on it "Middleton Transfer", which the evidence shows is the name under which defendant Middleton was operating. Other evidence shows that it had inscribed on it "Phone No. 1136", which is the number of defendant Middleton's office telephone; that defendant Middleton directed Vandergriff to haul the hay; that he offered to go with him and help him load the hay and defendant Middleton told him that Duncan McArthur had employed another person to help Vandergriff load the hay; that both he and Vandergriff had been working for defendant Middleton for several years immediately prior to the date of the accident and that Middleton paid them both for their services.

Ernest Martin testified that he was employed by defendant Middleton the next morning after the accident to help unload the hay from the Chevrolet truck involved in the accident; that he did unload the hay; and that defendant Middleton paid him for his work.

The evidence also shows that all Social Security taxes on Vandergriff were

paid by defendant Middleton. This defendant testified, however, that Leo thereafter reimbursed him for all taxes paid.

We think this evidence, despite evidence to the contrary, was sufficient to take the case to the jury on the question as to whether the relation of employer and employee existed between defendant Middleton and Vandergriff on the date the accident occurred, and that it was also sufficient to authorize the jury to find that such relation did at that time exist.

It is not essential that direct evidence be offered in order to establish the relation of employer and employee. Proof of the existence of such relation may be made as fairly and fully by circumstantial evidence as by evidence which is direct. 35 Am. Jur. 451. See, also, Crum v. Walker, 241 Iowa 1173, 44 N. W. 2d 701.

Defendants assert that the court erred in admitting in evidence, over their objection, the evidence of Ernest Martin to the effect that he was employed by Middleton to unload the hay the next morning after the accident occurred. Under the facts and circumstances, as stated above, we think this evidence was properly admitted. The court committed no error in this respect.

It is further contended that Standford Irvin testified that Vandergriff was employed by Marion W. Middleton at the time he was driving the truck in question; that this evidence was incompetent and should have been excluded on their objection for the reason that it amounted to nothing more than a conclusion or opinion of the witness without any substantial facts or circumstances upon which to base such conclusion. We do not understand that Mr. Irvin testified or intended to testify that Vandergriff was in fact employed by defendant Middleton to drive the truck in question. He simply testified that he and Vandergriff had been working for defendant Middleton some time immediately before the day of the accident and that Middleton paid them both for their services and that defendant Middleton told Vandergriff to haul the hay. No prejudicial error was committed by admitting this evidence.

Under separate assignment it is contended that the court erred in instructing the jury that if they found for the plaintiff, the defendants would be jointly liable for all damages sustained and made no attempt to limit the liability of the defendant Highway Insurance Underwriters to the maximum specified in the policy. Counsel do not charge that the general verdict in one sum against both defendants, or the judgment dividing the jury's award or assessment of damages into two parts is void. Their only argument seems to be that if the jury had been specifically instructed that the insurer's liability was limited by the terms of the policy to $5,000 for injury to or death of one person, then the verdict might have been less than it was. As hereinbefore noted the judgment entered by the court specifically limited plaintiff's recovery against the insurer, Highway Insurance Underwriters, to the $5,000 specified in the policy, plus interest from the date of the verdict—a fact not mentioned in the argument. If the trial court's failure or omission to give the instruction referred to was error as to that defendant, it appears to have been cured by the judgment, and no argument is presented to the contrary. As to the defendant Middleton, there is no basis in the record for supposing that the jury intended to limit his liability to his insurance indemnity, or that, if the court's instructions had included specific direction limiting recovery against his codefendant, the verdict would have been less than it was. As hereinbefore noted, plaintiff's petition described the insurance, including its specific amount, and a copy of the policy itself was attached. This pleading made it clear that no liability beyond the limit named in the policy was sought to be enforced against the insurance company. The jury was spe-

cifically referred to the pleadings in the court's introductory instructions. We have no right to assume that the jury disregarded or overlooked these things in its deliberations. The fact that it returned a general verdict in one lump sum against both defendants, rather than apportioning its award or returning separate verdicts, is an insufficient basis, in itself, for such an assumption. The record does not show that the form of the verdict was ever discussed. Neither party now claims that it was. Nor is there any evidence in this case, as in some, that the jury ever intended or attempted to assess damages against the insured in a lesser amount than against the insurer. In this connection, see, for instance, West et al. v. Abney, 203 Okla. 227, 219 P. 2d 624. It is axiomatic that to constitute cause for reversal, an alleged error must be prejudicial to the rights of the party complaining thereof. In this case, the verdict in itself does not show such prejudice and counsel's argument that it might have been different had the alleged erroneous instruction been different is no more than mere speculation. We cannot order the judgment set aside and vacated on such a basis. In keeping with the presumptions accorded a verdict on appeal, it must clearly appear that the alleged error complained of in the court's instruction of the jury has caused a miscarriage of justice. Labenne v. Kaufman, 184 Okla. 565, 89 P. 2d 281. There is no such appearance of injustice herein. The judgment is affirmed.

Rehearing Denied March 31, 1953.