## SHERIDAN OIL CO. v. WALL.

No. 29444. April 30, 1940.

Rehearing Denied May 21, 1940.

Application for Leave to File Second Petition for Rehearing Denied June 11, 1940.

*103 P. 2d 507.*

Marvin T. Johnson, of Tulsa, for plaintiff in error.

R. E. Stephenson, of Sapulpa, for defendant in error.

HURST, J. The Sheridan Oil Company appeals from a judgment in favor of D. D. Wall awarding damages for alleged pollution of a water well, arising from the negligence of the oil company in failing properly to plug a near-by oil well, from which crude oil escaped causing the pollution claimed.

Plaintiff's theory is that the oil well had not been plugged in the manner provided in section 11581, O. S. 1931, 52 O. S. A. § 297, and the defendant's theory is that the well had been plugged in accordance with rules and regulations of the Corporation Commission promulgated pursuant to section 3671, O. S. 1931, 17 O. S. A. § 53. That some oil had seeped out of the oil well was not denied, but the defendant claimed that the amount was only that which ordinarily would be forced to the surface in the process of plugging; whereas the plaintiff claimed that there was a continual seepage and that gas escaped forcing the oil to "bubble up" and escape, thereby causing a continuing nuisance. It was contended by the landowner that the oil in the top of the well seeped through the water sands, and also was carried by the surface waters during rainy periods, and in these ways polluted the water well.

Evidence supporting plaintiff's position was not of the highest type, and in some respects was conflicting. The testimony, however, tended to show that there was a seepage of oil sufficient to cause a pool at the surface; that this oil was spread over the ground by rains, sometimes as far as 90 feet from the oil well; that the oil stood in the top of the oil well at the level of the water sands; that the water well had been cleaned out, but disclosed a seepage of oil from the direction of the oil well; that the oil well had been producing as much as two barrels of oil when abandoned; that proper plugging of wells would restrain the oil from coming to the surface; that ordinary soil was used to fill the abandoned hole; that the water well before abandonment of the oil well contained usable water; that after the oil spread, the water in the water well became unfit for either man or cattle. It was not shown that any other oil wells were in proximity to the one in question here, which was located about 250 feet from the water well. Evidence to prove the difference in rental value of the land on which the water well stood, before and after its pollution, was introduced, as was evidence of the cost of properly plugging the oil well to abate the nuisance. The verdict was for less than the amount shown to be a proper charge for plugging.

The oil company's evidence to prove that the well had been plugged properly did not show that it had plugged the well under the direction of an inspector of the Corporation Commission. It sought to show that the well had been plugged in accordance with the standard set by Rule 14 of the Corporation Commission, promulgated under authority of section 3671, O. S. 1931, 17 O. S. A. § 53. This rule requires that all abandoned wells must be plugged under the immediate supervision of a conservation agent, and that the plugging must be such as to confine all oil, gas, or water in the strata in which they occur, by use of a mud-laden fluid of maximum density weighing at least 25 per cent. more than an equal volume of water. The rule provides further for giving notice to the commission or its agent in the field before plugging is done, and for notices to lessees of adjoining properties. It provides, however, that plugging shall not be delayed on account of lack of notice to such lessees or to the landowner. The oil company offered evidence contradictory to plaintiff's as to the condition of the water well and other matters.

The oil company presents the following propositions for reversal: (1) That, since its evidence tended to prove that it had complied with the Corporation Commission's rule in plugging the well, there was no evidence of negligence; (2) that there was no evidence that the water well was polluted, or that the pollution, if any, was caused from the oil well; (3) that incompetent evidence

was admitted; and (4) that certain instructions were erroneous.

1. In support of its first contention the company argues that section 11581, O. S. 1931, 52 O. S. A. § 297, has been superseded by section 3671, O. S. 1931, 17 O. S. A. § 53. With this contention we agree. Section 11581 is from the Conservation Act passed in 1909, when the Chief Mine Inspector appointed the oil and gas inspectors. Section 3671 is from the Conservation Act passed in 1917, chapter 207, S. L. 1917. An examination of the latter act discloses it is a comprehensive Conservation Act, and that the provisions thereof granting powers to the Corporation Commission are not reconcilable with the former act, in that plugging of wells is to be done under rules and regulations to be promulgated by the commission, after hearing, and not as the former act required. It is evident that the Legislature intended to give the commission exclusive jurisdiction to make appropriate regulations for plugging wells, unhampered by prior law prescribing the exact manner thereof. See section 3670, O. S. 1931, 17 O. S. A. § 52; Love et al. v. Boyle, 72 Okla. 300, 180 P. 705; In re Application of Jackson, 179 Okla. 577, 66 P. 2d 1101. It must be presumed that the rule was regularly adopted and promulgated after hearing as required by the statute. Williamson-Halsell-Frazier Co. v. State, 68 Okla. 40, 171 P. 453. It does not follow, however, that the defendant is entitled to a reversal on account of this alleged error. We find nothing to show that the case was submitted to the jury on the theory that section 11581 applied; but, on the contrary, we find that instruction No. 8, given without objection, directly states the substance of Rule 14. The defendant has no cause of complaint on this point.

The question of the sufficiency of the evidence to meet the requirements of the rule is also presented. No notice was given the commission and no agent of the commission was present at the plugging; therefore, any claim of nonliability which otherwise possibly might have been asserted by reason of compliance with the inspector's directions is not available. The rule requires that the plugging must be done so as to confine the oil or gas to the strata in which they occur, and material of a certain density must be used, or cement or plugs. There was some evidence that ordinary soil was used and evidence that a hole properly plugged does confine oil and gas, and there was also the evidence of the "bubbling up" of the oil and gas. The jury may well have concluded that the "bubbling up" was proof enough that the oil and gas had not been confined in the strata in which they occurred. We cannot say, therefore, that the evidence of the defendant as to plugging is either uncontradicted or necessarily in itself establishes proper compliance with the rule invoked.

2. It is next said that the verdict is based upon speculation and conjecture, in that no causal connection is shown between negligence and injury. The evidence was circumstantial. The jury was not required to believe the defendant's witnesses as to the character of the water. It had before it evidence of plaintiff's witnesses as to the looks and taste of the water at various times, and the testimony indicating that cattle would not drink it and that oil contaminated it. From these facts it could deduce that pollution actually resulted. Although the circumstances showing that the pollution resulted from the oil well are not numerous, yet we cannot say that "all unprejudiced minds must agree that any one of several conclusions consistent with nonliability of defendant may as reasonably be drawn therefrom as conclusions of liability under plaintiff's theory of the case," as stated in Phillips Petroleum Co. v. Davis, 182 Okla. 397, 77 P. 2d 1147. We cannot agree, as suggested, that it is as reasonable to say that the plaintiff poured oil into the water well, or that some enemy of the plaintiff or defendant may have done so, as to attribute the pollution to defendant's abandoned oil well. This case depends upon a combination of circumstances and inferences therefrom and

not upon inference or conjecture upon inference, as contended. The case meets the test stated in St. Louis-S. F. Ry. Co. v. Matthews, 174 Okla. 167, 49 P. 2d 752, that it must be shown that a given result more probably was occasioned by wrongful commission or omission of duty than by some other cause or condition inconsistent with negligence. See St. Louis-S. F. Ry. Co. v. Starkweather, 148 Okla. 94, 297 P. 815. The evidence was sufficient to go to the jury on these questions and its verdict controls. The Supreme Court of Kansas found the evidence in a similar situation sufficient, although the abandoned well in that case was nearly twice as far from the water well as is the case here. See Hall v. Galey, 126 Kan. 699, 271 P. 319. The evidence hereinabove set forth presents a different situation than that presented in Pine v. Rizzo, 186 Okla. 35, 96 P. 2d 17.

3. The further contention is made as to the introduction of evidence to prove damages. The petition alleged in general terms actual damages in the sum of $1,000 and damages of $2,500 as the cost of plugging the well, i. e., abating the nuisance. As part of his actual damage to the premises, plaintiff proved the difference in rental value of the land before and after the pollution. The plaintiff's petition did not allege merely damage to crops, but alleged pollution to the water well which caused damages to the premises. These damages might well be measured in terms of rental value for compensation for the temporary injury caused. In the case of Oklahoma City v. Tyetenicz, 175 Okla. 228, 52 P. 2d 849, it is said that in many states, including Oklahoma, the diminution in rental value of the property is held to be the proper measure of damages for temporary injury to property.

The other evidence objected to is that respecting the cost of plugging the oil well, that is, by abating the nuisance. This testimony was given by a witness who had had experience in plugging wells. Although he did not have exact knowledge of all elements, such as depth of well, size, and the like, he had knowledge in general of the depth of drilling in the oil fields in the area, and he had seen the well when drilling and had seen it again just before the trial, and knew the approximate depth of the sands. He gave his estimate as to the cost of plugging. It is true that the witness placed the cost at what he himself would do it for, but, when defendant objected to a restatement of the question to make it apply generally as being repetition, the court stated without objection: "I don't see how it could be answered in any other way. He says a thousand dollars." In view of this lack of objection to the court's interpretation of the answer, it must be treated as if the witness himself had so answered. This evidence was relevant to prove the cost of abating. The verdict was considerably less than the amount fixed, and there was no counter evidence on this point.

4. The contention that the instructions are erroneous is based for the most part on the theory that they permit the jury "to speculate on the question of negligence when there is not one iota of proof of negligence on the part of the defendant." It is obvious that what has heretofore been said as to the evidence disposes of this contention. We have also pointed out that there was evidence disputing the claim that the plugging was done in accordance with the rules of the commission; hence the instruction leaving to the jury the question of fact as to such compliance was correct. We do not accept the defendant's theory that there was no dispute as to whether the well had been properly plugged.

It is claimed that the instruction on the measure of damages is incorrect in that the damages claimed were for permanent injury and that the court should have instructed on the rule of difference in market value of the land before and after the alleged injury as referred to in City of Ardmore v. Orr, 35 Okla. 305, 129 P. 867, and Pulaski Oil Co. v. Edwards, 92 Okla. 56, 217 P. 876. These cases have reference to permanent causes of injury and permanent

injuries and not to temporary and abatable causes. The company's contention is based upon some allegations in the petition as to alleged permanent damage to the land for crop production, but the petition also alleges the injury to the water well and the necessity and cost of plugging the oil well to abate the cause of damage. No evidence was offered as to permanent damages or injury, but the cause was tried on the theory that the nuisance could be abated, that it was a temporary nuisance. The court instructed the jury that it could give damages for the depreciated rental value for two years and for the reasonable cost of plugging the oil well.

In cases where the defendant remains in control of the nuisance and the defendant's liability has been determined, it is not presumed that the defendant will not remedy the cause, and the damages are restricted to the loss in rental values, and such incidental or special damages as may be proved, with successive suits permissible if the nuisance is not abated. See Choctaw, O. & G. Ry. Co. v. Drew, 37 Okla. 396, 130 P. 1149, 44 L.R.A. (N. S.) 38; Ardmore v. Orr, 35 Okla. 305, 129 P. 867; 46 C. J. 827-829. But here the defendant has abandoned the property and has no further control thereof. He is in a position similar to a tenant who has surrendered possession of premises without making necessary repairs. In such cases an element of damages is the cost of repairing the injury which the nonperformance or negligent performance of the defendant has caused. Loughlin v. Casey, 21 Pa. Sup. Ct. 477; Appleton v. Marx, 191 N. Y. 81, 83 N. E. 563, 16 L.R.A. (N. S.) 210. It is evident that the repair or restoration of this property can be had only by proper plugging of the oil well, which will remove the cause of the trouble. The rule as to recovery of "temporary" damages assumes either that the defendant by reason of successive suits against him will be compelled to remove or abate the cause of the injury, or that the plaintiff may be able to remedy the cause of the injury or relieve his property from the ill effects thereof. McHenry v. Parkersburg, 66 W. Va. 533, 66 S. E. 750. And where plaintiff abates the nuisance he is entitled to recover his reasonable expenses thereby incurred. Emery v. Lowell, 109 Mass. 197; Murray v. City of Butte, 35 Mont. 161, 88 P. 789.

The plaintiff here has not abated the nuisance, nor has the defendant. But the defendant is not in possession of the premises and has denied the existence of the nuisance, is no longer operating it, has not offered to abate it, and it is evident that it is not in position to exercise any right it might otherwise have to abate the nuisance. The recovery of the plaintiff evidently includes allowance for compensation to him for abating the nuisance, since the amount of the verdict exceeds the sum that could be claimed for reduced rental value. If the plaintiff elects to bar himself from future recoveries in this manner, we find no good reason why he should not be allowed to do so. The instruction was not given on the wrong theory.

Furthermore, the assignment of error goes to many instructions as a group. We have examined the instructions as a whole, and conclude that they reasonably presented the issues involved, and contain no serious errors.

The judgment is accordingly affirmed.

BAYLESS, C. J., WELCH, V. C. J., and RILEY, OSBORN, DAVISON, and DANNER, JJ., concur. CORN and GIBSON, JJ., absent.