**Donnie D. MARSHALL and Christie A. Marshall, Plaintiffs–Appellees,**

v.

**EL PASO NATURAL GAS COMPANY and Meridian Oil Production, Inc., Defendants–Third–Party Plaintiffs–Appellants,**

**Western Company of North America, Third–Party Defendant.**

**No. 87–1829.**

United States Court of Appeals, Tenth Circuit.

May 17, 1989.

Robert N. Barnes (Jane Good Rowe, with him on the brief), of Stack & Barnes, P.C., Oklahoma City, Okl., for plaintiffs-appellees.

Neil Peck of Davis, Graham & Stubbs, Denver, Colo. (Grey W. Satterfield and Gregg R. Renegar of Kornfeld, Franklin & Phillips, Oklahoma City, Okl., David M. Ebel and Charles L. Kaiser of Davis, Graham & Stubbs, Denver, Colo., and Gregory E. Simmons, Houston, Tex., were on the briefs), for defendants-third-party plaintiffs-appellants.

Before MOORE, TACHA and BRORBY, Circuit Judges.

BRORBY, Circuit Judge.

This appeal arises out of a diversity suit initiated by plaintiffs Mr. and Mrs. Marshall (Marshalls) against defendants El Paso Natural Gas Company and Meridian Oil Production, Inc. to recover damages related to the drilling and plugging of an oil and gas well on Marshalls' real property. For purposes of this appeal we will refer to El Paso Natural Gas Company and Meridian Oil Production, Inc. jointly as Meridian. The jury returned a verdict for Marshalls, awarding $350,050 for diminution in value of the property, $50,000 for nuisance damages, and punitive damages of $5,000,000. Meridian appeals, asserting the district court erred: (1) in refusing to stay its proceedings and refer the factual issues of the case to the Oklahoma Corporation Commission under the doctrine of primary jurisdiction; (2) in excluding Meridian's proffered evidence of the Commission's authority to order remedial actions to correct Marshalls' property damage; and (3) in failing to instruct the jury that punitive damages in excess of actual damages may be awarded only upon a finding of clear and convincing evidence rather than a finding of a preponderance of the evidence. Finding no errors we affirm.

## I. Primary Jurisdiction

Meridian asserts the district court erred in refusing to stay its judicial proceedings under the doctrine of primary jurisdiction in order to refer technical questions to the Oklahoma Corporation Commission (Commission). We disagree.

Primary jurisdiction is invoked in situations where the courts have jurisdiction over the claim from the very outset but it is likely that the case will require resolution of issues which, under a regulatory scheme, have been placed in the hands of an administrative body. *Sunflower Elec. Coop. v. Kansas Power & Light Co.,* 603 F.2d 791, 796 (10th Cir.1979) (citing *United States v. Western Pacific R.R. Co.,* 352 U.S. 59, 64, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956)). Meridian does not contend the district court is without subject matter jurisdiction; rather it asserts the district court should have referred this case to the Commission under primary jurisdiction. The doctrine of primary jurisdiction provides that where the law vests in an administrative agency the power to decide a controversy or treat an issue, the courts will

refrain from entertaining the case until the agency has fulfilled its statutory obligation. *Sunflower*, 603 F.2d at 795 (citing *California v. Federal Power Comm'n*, 369 U.S. 482, 82 S.Ct. 901, 8 L.Ed.2d 54 (1962)). Under the doctrine of primary jurisdiction, the judicial process is suspended pending referral of the issues to the administrative body for its views. *Western Pacific*, 352 U.S. at 64, 77 S.Ct. at 165. This circuit and Oklahoma courts have referred the issue of oil and gas well drilling costs to the Commission under the doctrine of primary jurisdiction. *GHK Exploration Co. v. Tenneco Oil Co.*, 847 F.2d 650 (10th Cir.1988); *Arkla Exploration Co. v. Shadid*, 710 P.2d 126, 128 (Okla.App.1985); *W.L. Kirkman, Inc. v. Oklahoma Corp. Comm'n*, 676 P.2d 283, 287 (Okla.App.1983).

■ In *Far East Conference v. United States*, 342 U.S. 570, 574–75, 72 S.Ct. 492, 494–95, 96 L.Ed. 576 (1952), the Supreme Court discusses the factors to be considered in applying the doctrine of primary jurisdiction: whether the issues of fact raised in the case are not within the conventional experience of judges; or whether the issues of fact require the exercise of administrative discretion, or require uniformity and consistency in the regulation of the business entrusted to a particular agency. The district court is not required to defer factual issues to an agency under the doctrine of primary jurisdiction if those factual issues are of the sort that the court routinely considers. *United States v. Zweifel*, 508 F.2d 1150, 1156 (10th Cir.), *cert. denied*, 423 U.S. 829, 96 S.Ct. 47, 46 L.Ed.2d 46 (1975) (court determination of good faith location of mining claims does not require deference to agency); *Denver Union Stockyard Co. v. Denver Live Stock Comm'n Co.*, 404 F.2d 1055, 1059 (10th Cir.1968), *cert. denied*, 394 U.S. 1014, 89 S.Ct. 1631, 23 L.Ed.2d 40 (1969) (court

consideration of monopolization of business in private antitrust suit did not require stay of judicial proceedings although industry was regulated by an agency).

■ We review under an abuse of discretion standard the district court's decision whether to apply primary jurisdiction and refer this case to the Commission. *See, Burford v. Sun Oil Co.*, 319 U.S. 315, 318, 63 S.Ct. 1098, 1099, 87 L.Ed. 1424 (1943) (discretionary standard applied to review abstention doctrine); *Grimes v. Crown Life Ins. Co.*, 857 F.2d 699, 703 (10th Cir. 1988), *cert. denied*, — U.S. —, 109 S.Ct. 1568, 103 L.Ed.2d 934 (1989) (same).

Meridian asserts the district court should have referred this case to the Commission because the following factual issues were raised requiring the application of primary jurisdiction: whether defendants' operations have created a "time bomb" that will "explode" in the immediate future; whether and to what extent defendants' operations have damaged the environment; and what remedial action, if any, is required to rectify any error defendants may have made in carrying out their operations. Meridian contends these factual issues are not within the conventional knowledge of judges or jurors, and will result in inconsistent orders of the district court and the Commission.

The "time bomb" issue goes to the Marshalls' claim that Meridian deficiently plugged the well. The jury was instructed it could find liability based on either a theory of negligence or negligence per se for violation of Commission rules. Instruction No. 12. The jury was also specifically instructed on the Marshalls' contentions of how the well was improperly plugged.[1]

■ The issue of negligent plugging of an oil and gas well has been determined by

1. The jury was instructed in pertinent part as follows:

The plaintiffs have contended that the well was improperly plugged and resulted from: the failure separately to plug the Atoka and Red Fork formations; the failure to use "plugging mud" at all intervals in the well bore; the failure to properly set a plug at the base of the surface casing. The plaintiffs contend that be-

cause of the improper plugging of the well, it is probable that the well will in the future blow out causing damage to the plaintiffs and their property. The plaintiffs contend that cleanup work needs to be done to correct or abate most of the improper plugging, to include reentering the well to properly plug it.
Instruction No. 17.

the Oklahoma courts without referring the case to the Commission. *See, Sunray Mid–Continent Oil Co. v. Tisdale*, 366 P.2d 614 (Okla.1961) (the question of negligence in plugging an exploratory well which allowed salt water to pollute a fresh water stratum was left to the jury); *Harper–Turner Oil Co. v. Bridge*, 311 P.2d 947 (Okla.1957) (action for negligent plugging of an oil and gas well resulting in pollution of a water well submitted to a jury). The issue of negligence per se in plugging an oil and gas well has also been determined by the Oklahoma courts without referring the case to the Commission. *See, Nichols v. Burk Royalty Co.*, 576 P.2d 317, 320 n. 2 (Okla.Ct.App.1977) (jury instructed on negligence per se theory); *Sheridan Oil Co. v. Wall*, 187 Okla. 398, 103 P.2d 507 (1940) (claim of negligence per se where oil well was not plugged in accordance with Commission rules submitted to jury). Based on these cases we cannot say that the issue of negligence or negligence per se in the plugging of an oil and gas well is a factual issue which is not within the conventional knowledge of judges and jurors. The district court did not abuse its discretion in refusing to refer the plugging issue to the Commission under the doctrine of primary jurisdiction.

■ Likewise, the determination of whether Meridian's acts caused water or soil pollution is not a determination outside of the conventional knowledge of the judge and jury. There are many cases in which the Oklahoma courts have determined the existence of water and soil pollution from oil and gas activities without referring the issue to the Commission. *See e.g., Ohio Oil Co. v. Elliott*, 254 F.2d 832 (10th Cir. 1958) (action under Oklahoma law for damages to cattle from drinking water from a stream polluted by the release of salt water); *Sunray* (negligent plugging of oil well polluted fresh water well); *Harper–Turner Oil* (same); *Tenneco Oil Co. v. Allen*, 515 P.2d 1391 (Okla.1973) (action to recover damages to land from escaping oil and salt water including cleanup costs); *Sunray DX Oil Co. v. Brown*, 477 P.2d 67 (Okla.1970) (action to recover damages to land from leaking pipeline); *Nichols* (action

to recover damages to land where defendant admitted injurious spillage). We do not find the district court abused its discretion in refusing to apply primary jurisdiction to the water and soil pollution issues.

■ Meridian also contends the determination of what remedial action was necessary to rectify any errors the defendants made in carrying out their operations should have been referred to the Commission. Meridian has failed to refer us to the record where the Marshalls seek remedial action. We did find Marshalls asserted as part of their claim for damages that cleanup work needs to be done on their property. Instructions Nos. 11, 13, 14, 15, 17. The issue of damages for cleanup of oil and gas operations in a nuisance action has been addressed by the Oklahoma courts without referral to the Commission. *See, Allen*, 515 P.2d at 1396–97 (damages awarded for cleanup of pollution) and the cases cited therein; *see also Sheridan Oil* (damages awarded to cover cost of plugging well). Marshalls' claim for damages based on allegations that it would have to clean up the property is not a sufficient basis to require the district court to refer this case to the Commission.

Meridian also asserts that the district court's exercise of jurisdiction in this case will result in inconsistent decisions. Meridian contends the Marshalls recovered damages in part to pay for cleanup of the pollution on their land, and the Commission may, at some future time, order Meridian to take remedial actions such as removing the reserve pits or replugging the well. Although the Commission has authority to order remedial action that authority has not prevented the courts from awarding damages for cleanup. *See Allen*, 515 P.2d at 1396–97 (damages awarded for cleanup of pollution); *Sheridan Oil Co.*, 103 P.2d at 510–11 (damages awarded to replug well); *Schlegel v. Kinzie*, 158 Okla. 93, 12 P.2d 223 (Okla.1932) (trial court's granting of a mandatory injunction ordering oil company to bury pipe lines and remove other trash left from drilling affirmed on appeal).

■ Meridian moved to stay the district court proceedings on October 3, 1986 asserting it had filed an application with the Commission to review the Marshalls' claims of pollution. The motion fails to state when the application was filed or its status before the Commission. This motion was filed only two months before the jury trial. While the timing of the motion is not dispositive, the district court did not abuse its discretion in denying the motion to stay simply because the Commission might order Meridian to do additional remedial acts, when the jury trial was pending in two months and the court had no way of knowing when or how the Commission might act upon Meridian's application. Meridian has failed to cite us to any Oklahoma cases which have resulted in inconsistent orders by the district court and the Commission. We are not persuaded the potential for inconsistent orders was so likely that the district court abused its discretion in refusing to refer this case to the Commission under primary jurisdiction.

■ Meridian also contends primary jurisdiction should be applied in the interest of "orderly and sensible coordination of the work of agencies and of the courts," (quoting *Zweifel*, 508 F.2d at 1156). In *Zweifel* the court refused to defer to the Interior Department the issue of the good faith placement of mining claims finding that issue was of the sort the court considered routinely. The decision discusses, but does not rely upon, the coordinated decision-making aspect of primary jurisdiction. Exercise of primary jurisdiction may be based on preventing the disruption of state efforts to establish a coherent policy with respect to a matter of substantial public concern, *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), or based on a policy of conserving judicial resources in situations involving the contemporaneous exercise of concurrent jurisdictions, *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). *Grimes*, 857 F.2d at 707. Meridian's previous arguments for the exercise of primary jurisdiction come under the *"Burford* policy," while this argument on coordinated

decision making comes under the *"Colorado River* policy." We refuse to reverse the district court's exercise of jurisdiction based on coordinated decision making because "under *Colorado River*, once a federal court has tried the case on its merits, it would be rare that judicial resources would be conserved by abstaining on appeal." *Grimes*, 857 F.2d at 707.

Meridian contends primary jurisdiction must be invoked because the parties have elected to submit the issues to the Commission. We find no merit in this contention. Our review of the record indicates the Marshalls initially pursued remedies with the Commission in September 1982, but their application was dismissed in October 1982 without meaningful action. We do not find that the Marshalls elected to participate in the application that Meridian submitted to the Commission in 1986 which was the basis of the motion to stay the court proceedings.

■ Meridian contends exercise of primary jurisdiction is required because the Marshalls are challenging Commission Rule 3–101 by proving Meridian was negligent per se for violating this rule. Marshalls' use of Rule 3–101 to prove negligence per se is not a direct challenge to the rule requiring the matter to be referred to the Commission for an initial determination. *See Greyhound Leasing & Finan. Corp. v. Joiner City Unit*, 444 F.2d 439, 445 (10th Cir.1971).

■ The exercise of primary jurisdiction between the courts and the Commission has often hinged on whether the dispute involves public or private rights. In *Tenneco Oil Co. v. El Paso Natural Gas Co.*, 687 P.2d 1049 (Okla.1984), the Oklahoma Supreme Court determined that parties to a forced-pooling order issued by the Commission could contract as to specific terms of the operating agreement. The court analyzed its jurisdiction to review the rights under the contract. It found the relief Tenneco sought was private in nature and not an attack upon the public rights function of the Commission, i.e., to regulate and administer the conservational laws

and policies of the state. *Id.* at 1054. It concluded the district court had jurisdiction to review the rights under the contract.

In this case Marshalls sought to recover damages to their property and water caused by Meridian's negligent operations in drilling the well. This is a private rights dispute derived from the liability of one individual to another under the laws as defined. *See Tenneco,* 687 P.2d at 1053 (quoting *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 69–70, 102 S.Ct. 2858, 2870–71, 73 L.Ed.2d 598 (1982) (defining private rights dispute)). In *Greyhound Leasing* we held that a district court properly exercised jurisdiction over a claim of *private* nuisance for encroachment of saltwater. The court stated there was no administrative remedy available under the primary jurisdiction of the Commission for the tort action asserted. *Id.* at 445. Under the private versus public test for jurisdiction, we do not find the district court abused its discretion in refusing to defer this matter to the Commission under primary jurisdiction.

We affirm the district court's exercise of jurisdiction in this case.

## II. Evidentiary Issues

Meridian asserts the district court erred in refusing to admit material and relevant evidence critical to its defense. Meridian asserts the district court improperly excluded the following evidence: that the Commission has continuing authority to determine the existence of unsafe conditions from oil and gas operations and may order remedial action be taken by the well operator; that the defendants initiated proceedings before the Commission to determine whether their operations caused environmental damage and what remedial actions were required; and that if the Commission held a hearing regarding the Marshalls' well, a Commission field inspector would testify that the well was not dangerous and he would not recommend that it be replugged. In excluding the proffered testimony the district judge reasoned that it was not relevant, and it was speculative and confusing requiring exclusion under

Fed.R.Evid. 403. On appeal, Meridian argues the district court abused its discretion in excluding this evidence because it was relevant and its admission was not substantially outweighed by the danger of confusion. We disagree.

A trial court has broad discretion to determine whether evidence is relevant, and its decision will not be reversed on appeal absent a showing of clear abuse of that discretion. *Beacham v. Lee–Norse,* 714 F.2d 1010, 1014 (10th Cir.1983). The same standard of review applies to a trial court's determination, under Fed.R.Evid. 403, that the probative value of the evidence is outweighed by its potential to prejudice or confuse the jury. *Id.; see also Hill v. Bache Halsey Stuart Shields Inc.,* 790 F.2d 817, 825 (10th Cir.1986). Error may not be predicated upon a ruling which excludes evidence unless a substantial right of a party is affected. Fed.R.Evid. 103(a); *Smith v. Atlantic Richfield Co.,* 814 F.2d 1481, 1486 (10th Cir.1987).

First, Meridian asserts it offered the testimony on the Commission's continuing remedial powers to show the plaintiffs' damages to clean up the property are substantially less than they claim because the Commission has the power to order Meridian to clean up the property at no cost to Marshalls. Meridian's proffered testimony that the Commission might take remedial action on the Marshalls' property is pure speculation. Testimony that the Commission has the power to act is not probative of the fact that it will act. Where Meridian failed to place into evidence any proof that the Commission would act to correct the problems on the Marshalls' land, the testimony on the Commission's authority to act fails to make the existence or extent of plaintiffs' damages any more or less probable. In *Shoppin' Bag of Pueblo, Inc. v. Dillon Cos.,* 783 F.2d 159, 165 (10th Cir. 1986), we affirmed the exclusion of a Federal Trade Commission investigation because it was of little probative value and highly prejudicial. Likewise in this case, the fact that the Commission might act is of even less probative value. Additionally, implying that the Commission would take

action if there were anything wrong places a "stamp of approval" on Meridian's actions which is highly prejudicial. The effect on a jury of the government "seal of approval" should not be underestimated; it can only be prejudicial. *Smith,* 814 F.2d at 1487. We do not find the district court abused its discretion in excluding this evidence of the Commission's authority to take remedial actions.

■ Second, Meridian asserts the district court erred in excluding the evidence that it had submitted an application to the Commission to determine if its activities had caused any damage to the Marshalls and to determine what remedial measures should be taken. Meridian contends this evidence mitigates plaintiffs' claim for punitive damages by showing it acted in good faith in ignoring plaintiffs' claims. The district court excluded this evidence under Fed.R.Evid. 403 as confusing to the jury. We are not persuaded the district court abused its discretion in excluding this evidence.

Meridian's application was filed with the Commission in November 1986, two and a half years after the Marshalls commenced this litigation. In ruling on the submissibility of the punitive damages issue to the jury, the court outlined, in part, the evidence upon which it relied: drilling the well without water strings; failing to seal the west pit with a bentonite seal before flowing fluids into it; flowing saline fluids into the east pit that was not lined with the prescribed 30 mil liner; instituting a hearing to obtain permission for annular injection without notifying the plaintiffs, thereby depriving them of an opportunity to object; filling the pits in such a way that it broke whatever seal had previously existed permitting percolation; and plugging the well in knowing violation of Commission rules requiring separation of formations. Each of these events occurred before Meridian's application to the Commission.

" 'Evidence of the parties' conduct subsequent to the event, which produces plaintiff's claim for punitive damages, whether aggravating or mitigating, must be probative of the defendant's state of mind at the time of the transaction.' " *O'Gilvie v. International Playtex, Inc.,* 821 F.2d 1438, 1449 (10th Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 2014, 100 L.Ed.2d 601 (1988) (quoting *Byers v. Santiam Ford, Inc.,* 281 Or. 411, 416, 574 P.2d 1122, 1125 (1978)). Meridian has made no showing that filing its application with the Commission in November 1986 is probative of its state of mind in 1981 and 1982 when it was drilling and plugging the Marshall well. Assuming the evidence established the good faith and good will of Meridian toward the Marshalls, such conduct came as a response to the complaint, which prayed for substantial actual and punitive damages. The evidence shows a desire to buy peace and minimize the risk of an award of actual and punitive damages and not that Meridian dealt with the Marshalls in good faith in drilling and plugging the well. We hold that evidence of Meridian's subsequent application to the Commission was properly excluded.

■ Third, Meridian claims the district court erred in excluding the field inspector's testimony that if the Commission held a hearing regarding the Marshalls' property he would recommend the Commission not replug the well. Meridian asserts it offered the testimony to show the plaintiffs failed to prove the well was dangerous. What a Commission employee would recommend to the Commission at a future date falls far short of relevant evidence. The district court excluded the evidence as irrelevant. Like the proffered evidence of the Commission's remedial powers, this evidence is speculative and prejudicial. The district court did not abuse its discretion in excluding it. Additionally, any error in excluding this evidence was harmless. The field inspector testified that he was at the site when the Marshalls' well was plugged in 1983 and he approved the plugging as proper. (However, the inspector also testified he was only present when the well was capped, not when the lower plugs were made.) This testimony alone is sufficient to establish Meridian's theory that the well was not dangerous. We will not disturb the district court's ruling where Meridian

has failed to show prejudice which would lead to a contrary result. *Smith*, 814 F.2d at 1486–87.

We affirm the district court's rulings excluding Meridian's proffered testimony regarding the Commission's potential remedial actions.

### III. Punitive Damages

On the issue of punitive damages, Meridian asserts three errors: (1) the district court failed to instruct the jury that it could not award punitive damages in excess of actual damages absent clear and convincing evidence of conduct supporting an award of punitive damages; (2) the district court allowed excessive punitive damages that bore no relation to the cause and extent of plaintiffs' injuries; and (3) the evidence does not support the district court's finding that clear and convincing evidence existed to support an award of punitive damages in excess of actual damages. We disagree.

In 1986 the Oklahoma legislature amended its punitive damages statute, 23 Okla. Stat.Ann. § 9 (1971), limiting the amount of punitive damages to the amount of actual damages awarded unless the court first should find clear and convincing evidence of punitive acts prior to submitting the issue to the jury, in which case the limit of punitive damages to actual damages would not apply. 1986 Okla.Sess.Laws, ch. 315 § 1. The amended statute went into effect November 1, 1986.

The district court determined the amended statute applied to this case.[2] At the conclusion of the evidence and prior to submitting the case to the jury, the trial judge made findings, on the record and out of the presence of the jury, concerning the submission of the punitive damages issue to the jury. The judge stated:

> I find by clear and convincing evidence as a preliminary matter and, of course, this is for final Jury determination, that

Defendant is guilty of conduct evincing a wanton or reckless disregard for rights of Plaintiff, oppression or malice, actual or presumed. I find no evidence of any fraud in the case.

The judge supported his findings by discussing part of the evidence upon which he relied.[3] He concluded by stating, "in consequence of this finding, the Jury will be presented a punitive damages instruction that does not cap the punitives to the amount of any actual damages that they find." Meridian excepted to this finding.

The jury was instructed the plaintiffs have the burden of proving every essential element of their claim by a preponderance of the evidence. Instruction No. 7. The jury was instructed they could award punitive damages upon finding the defendant has been guilty of conduct evincing a wanton or reckless disregard for the rights of another, oppression, fraud[4] or malice, actual or presumed. Instruction No. 26. The punitive damages instruction does not discuss the burden of proof. At trial, Meridian objected to instruction No. 26. On appeal, Meridian asserts the district court erred in failing to instruct the jury that any award of punitive damages must be based upon clear and convincing evidence. We disagree.

This is a case of first impression. The Oklahoma punitive damages statute was amended and became effective on November 1, 1986. The parties have not cited us to, nor have we been able to find, any cases discussing the plaintiff's burden of proof under the amended punitive damages statute. In the absence of an authoritative pronouncement from the state's highest court, our task is to predict how the Oklahoma Supreme Court would interpret the amended statute. *Daitom, Inc. v. Pennwalt Corp.*, 741 F.2d 1569, 1574 (10th Cir. 1984). We review the district court's interpretation of the amended statute *de novo*.

---

2. The applicability of the statute to this case filed in 1984 has not been raised by the Marshalls as a cross appeal.

3. For a summary of the district judge's findings see slip op. at 15–16.

4. This instruction was given even though the district judge found there was no evidence of any fraud. Meridian has not challenged the wording of this instruction on appeal.

*See Glenpool Utility Servs. Auth. v. Creek Co. Rural Water Dist. No. 2*, 861 F.2d 1211, 1214 (10th Cir.1988), *petition for cert. filed* March 18, 1989. The amended statute provides:

A. In any action for the breach of an obligation not arising from contract, where the defendant has been guilty of *conduct evincing a wanton or reckless disregard for the rights of another*, oppression, fraud or malice, actual or presumed, the jury, in addition to the actual damages, may give damages for the sake of example, and by way of punishing the defendant, *in an amount not exceeding the amount of actual damages awarded. Provided, however, if at the conclusion of the evidence and prior to the submission of the case to the jury, the court shall find, on the record and out of the presence of the jury, that there is clear and convincing evidence that the defendant is guilty of conduct evincing a wanton or reckless disregard for the rights of another, oppression, fraud or malice, actual or presumed, then the jury may give damages for the sake of example, and by way of punishing the defendant, and the percentage limitation on such damages set forth in this section shall not apply.*

B. *The provisions of this section shall be strictly construed.*

Okla.Stat.Ann. tit. 23, § 9 (1987) (emphasis indicates amended portions).

The primary goal of statutory construction is to ascertain and follow the intent of the legislature. *Ledbetter v. Alcoholic Beverages Laws Enforcement Comm'n*, 764 P.2d 172, 179 (Okla.1988). Statutory construction begins with consideration of the language used. *Id.* When amending a statute the legislature is presumed to be familiar with the then extant judicial construction that is in force. *Huff v. State*, 764 P.2d 183, 185 (Okla.1988). With these rules of construction in mind we turn to a discussion of Okla.Stat.Ann. tit. 23, § 9 (1987).

**5.** Before amendment, § 9 read:
In any action for breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud or malice, actu-

Under the previous statute, Okla.Stat. Ann. tit. 23, § 9 (1981),[5] punitive damages were submitted to the jury based upon a preponderance of the evidence standard. *See e.g., Young v. First State Bank, Watonga*, 628 P.2d 707, 711 (Okla.1981); *Wootan v. Shaw*, 205 Okl. 283, 237 P.2d 442, 443 (1951). The amended statute, Okla. Stat.Ann. tit. 23, § 9 (1987), incorporated the text of the previous statute and modified it by adding "wanton and reckless disregard for the rights of another" to the list of punitive conduct and by limiting the amount of punitive damages to the amount of actual damages awarded. Based on these changes, it does not appear that the Oklahoma legislature modified the burden of proof from a preponderance of the evidence to clear and convincing evidence, when the punitive damages are limited to the amount of actual damages awarded. Had the Oklahoma legislature wished the award of punitive damages by a jury to be conditioned upon the jury finding by clear and convincing evidence, it could easily have so provided in the statute.

The amended statute also added a new second sentence requiring the court to make a finding, before the case is submitted to the jury, whether there is clear and convincing evidence to allow an award of punitive damages in excess of the actual damages awarded. Our reading of this change does not support the conclusion that the issue of "enhanced" punitive damages may only be submitted to the jury under the standard of clear and convincing evidence. The second sentence does not discuss the burden of proof. A statute should be given a construction according to the fair import of the words taken in their usual sense, in connection with the context, and with reference to the purpose of the provision. *Jordan v. State*, 763 P.2d 130, 131 (Okla.Crim.App.1988).

■ A plain reading of the statute creates a threshold test for the plaintiff to

al or presumed, the jury, in addition to the actual damages, may give damages for sake of example, and by way of punishing the defendant.

meet in order for the issue of punitive damages to be submitted to the jury without limitation to the amount of actual damages. Once the threshold is met, the punitive damages issue is submitted to the jury under the standard of preponderance of the evidence to determine the amount of punitive damages regardless of whether it equals or exceeds the actual damages awarded. This construction is consistent with the legislature's intent to limit punitive damage verdicts in excess of actual damages to those cases in which the evidence meets a threshold of clear and convincing proof. We find no error in the district court's instructions to the jury that it could award punitive damages without limitation upon a preponderance of the evidence, where the district court made an initial finding that there was clear and convincing evidence the defendant's actions merited punitive damages.

Meridian next asserts the district court erred in allowing excessive punitive damages that bore no relation to the cause and extent of the plaintiffs' injuries citing *Garland Coal & Mining Co. v. Few,* 267 F.2d 785 (10th Cir.1959); *Hobbs v. Watkins,* 481 P.2d 746 (Okla.1971). Meridian contends the punitive damages bear no relation to the Marshall's injuries because the Commission may intervene and order Meridian to correct the problems on the Marshall's property. This contention relies on speculation the Commission may act at some future time. The district court is without discretion to reduce or eliminate punitive damages on the basis of events occurring after the trial. *Miller v. Cudahy Co.,* 858 F.2d 1449, 1458 (10th Cir.1988), *petition for cert. filed* Jan. 18, 1989. The district court did not abuse its discretion in refusing to reduce the award of punitive damages based on actions the Commission may take at some future date.

Meridian contends the district court erred in rejecting its evidence of good faith which led to an excessive award of punitive damages. We have discussed this contention in our discussion of evidentiary issues, and find no merit to it.

Next Meridian contends the district court erred in finding clear and convincing evidence of conduct that would support an award of punitive damages in excess of actual damages. The issue of whether there is sufficient evidence to justify an award of punitive damages is a question of law. *Miller,* 858 F.2d at 1457. On review we are confined to the assessment of whether the plaintiffs presented evidence sufficient that a reasonable person might conclude the defendants acted in a punitive manner. *Silkwood v. Kerr–McGee Corp.,* 769 F.2d 1451, 1456 (10th Cir.1985), *cert. denied,* 476 U.S. 1104, 106 S.Ct. 1947, 90 L.Ed.2d 356 (1986); *Garland Coal,* 267 F.2d at 790 (applying Oklahoma punitive damages statute). We have reviewed the portions of the record cited by the parties and hold the district court's finding of clear and convincing evidence of the defendants' punitive acts is supported by the record. This evidence includes: Meridian's drilling of the Marshall well without a water string to protect the fresh water aquifer even though Meridian attended a Commission meeting discussing the general problem of fresh water pollution and the need to set and cement surface casing fifty to 200 feet below the base of the fresh water; Meridian's failure to jet bentonite into the west pit in a manner to create an impervious seal; Meridian's use of the east pit with an inadequate plastic liner for five months after a Commission rule was issued specifying the liner as inadequate; and Meridian's failure to plug the Red Fork and Atoka formations separately in violation of Commission rules. The district court did not err in submitting this issue to the jury.

Marshalls assert Meridian is precluded from raising the sufficiency of the evidence issue on appeal because it failed to move for directed verdict at the close of all the evidence and failed to move for a new trial or a judgment notwithstanding the verdict or remittitur. We are not persuaded by Marshalls' argument that the issue of sufficiency of the evidence has not been preserved for appeal. At the conclusion of Meridian's case it moved for a directed verdict generally, and specifically

with respect to the issue of punitive damages. The district court denied the motion. After the court's ruling, the Marshalls presented two rebuttal witnesses who testified regarding the value of Marshalls' property. This testimony does not go to the issue of punitive damages. Meridian's previous motion for directed verdict is sufficient to preserve for appeal the issue of the sufficiency of the evidence to support the punitive damages award. *United States v. 353 Cases * * * Mountain Valley Mineral Water,* 247 F.2d 473, 476–77 (8th Cir.1957). Meridian's failure to move for judgment notwithstanding the verdict does not bar an appeal. *Hansen v. Vidal,* 237 F.2d 453, 454 (10th Cir.1956). Nor does its failure to move for a new trial bar an appeal where the issue of the sufficiency of the evidence was brought to the trial court's attention in the motion for directed verdict at the close of the evidence. *Cf. Holmes v. Wack,* 464 F.2d 86, 89–90 (10th Cir.1972) ("Failure to move for a directed verdict bars appellate review of the sufficiency of the evidence." (Quoting *Brown v. Poland,* 325 F.2d 984, 986 (10th Cir.1963))).

The district court's decision is AFFIRMED.