**Linda UNDERWOOD,**
**Plaintiff–Appellee,**

v.

**SERVICEMEN'S GROUP INSURANCE,**
**Defendant–Appellant.**

**No. 88–1319.**

United States Court of Appeals,
Tenth Circuit.

Dec. 28, 1989.

Richard B. Ferrari (Carolyn Cox with him on the brief), of Watkiss & Campbell, Salt Lake City, Utah, for defendant-appellant.

Stephen L. Johnston, Salt Lake City, Utah, for plaintiff-appellee.

Before BALDOCK, BRORBY and EBEL, Circuit Judges.

PER CURIAM.

This appeal is taken from a judgment of the United States District Court for the District of Utah determining that plaintiff was entitled to an additional $15,000 in insurance proceeds from the defendant. The amount represents an increase in coverage authorized by Congress after plaintiff's husband was discharged from the United States Army but before he died.

The facts are undisputed. Plaintiff's husband was a member of the United States Army, insured under a Servicemen's Group Life Insurance policy as described in 38 U.S.C. § 765, *et seq.* Sergeant Underwood was discharged on November 18, 1985, as one hundred percent disabled. As of that date, the insurance policy limitation was $35,000. 38 U.S.C. § 767(a) (1981).

On December 3, 1985, Congress amended the statute to increase the policy amount to $50,000. The effective date of that amendment (with a specific exception explained *infra*) was January 1, 1986. Sergeant Underwood, whose policy continued in effect for one year after his separation from the service, 38 U.S.C. § 768(a)(1)(A), died on January 30, 1986.

Defendant paid plaintiff the $35,000 in April of 1986, and she then filed this action claiming entitlement to $15,000, the difference between the $35,000 paid and the $50,000 provided for in the 1985 amendment. Servicemen's Group Insurance defended the claim on the ground that the statute entitling members of the uniformed service on active duty to $50,000 in life insurance coverage instead of the previous $35,000 did not apply to plaintiff's decedent because he was not on active duty at the time the policy increase became effective. The district court found that the increase in coverage inures to the benefit of a policy holder who holds a policy when the increase becomes effective, whether or not that insured remains eligible to be issued a policy. We disagree and reverse.

■ The district court's interpretation of the statutory provisions 38 U.S.C. § 765, *et seq.*, is a question of law, subject to de novo review by this court. *Marshall v. El Paso Natural Gas Co.*, 874 F.2d 1373, 1382 (10th Cir.1989); *E.E.O.C. v. Cherokee Nation*, 871 F.2d 937, 938 n. 1 (10th Cir.1989).

■ As initially enacted in 1965, the statute provided for $10,000 in insurance coverage to members of the armed services. Since then, Congress has amended the statute on several occasions for a number of reasons. In 1970, 1974, 1981, and 1985 the amount of insurance available to service personnel was increased to $15,000, $20,000, $35,000 and $50,000, respectively. Insurance coverage is effective the first day of active duty "or the date certified by the [Veteran's Administration] Administrator to the Secretary concerned as the date Servicemen's Group Life Insurance or group concerned takes effect, whichever is the later date." 38 U.S.C. § 767(a) (1986).

Pursuant to this section of the statute, the Administrator has promulgated (and amended) corresponding regulations governing the effective date of the increases in insurance coverage. 38 C.F.R. § 9.4 (1988).

For example, accompanying the 1970 increase, the Administrator revised 38 C.F.R. § 9.4 to read that each member of the armed forces "on duty on or after June 25, 1970, is automatically insured against death in the amount of $15,000...." 36 Fed.Reg. 3808, 3809 (February 27, 1971). The June 25, 1970, date is the enactment date of the amendment increasing the amount of coverage from $10,000 to $15,000.

Similarly, the regulations were amended in January of 1975 to reflect the 1974 increase to $20,000. Section 9.4 was changed to provide that "[e]ffective May 24, 1974, Servicemen's Group Life Insurance is issued in the amount of $20,000...." 40 Fed.Reg. 4135, 4137 (January 28, 1975). Again, the May 24, 1974, date is the effective date of the 1974 amendments to the statute.

The effective date of the 1981 increase in coverage (to $35,000) was December 1, 1981. Pub.L. No. 97–66, 95 Stat. 1026, 1037 (approved October 17, 1981). The corresponding amendments to the regulations, however, specifically provided that "[t]he $35,000 coverage does not apply to those members separated or released prior to December 1, 1981...." 38 C.F.R. § 9.4 (1987). *See* 48 Fed.Reg. 8069, 8070 (February 25, 1983). Finally, the December, 1985, amendment increasing coverage to $50,000 lists the effective date as January 1, 1986. Pub.L. No. 99–166, 99 Stat. 941, 957 (approved December 3, 1985). Again the accompanying regulation provides that the $50,000 coverage "does not apply to those members separated or released prior to January 1, 1986...." 38 C.F.R. § 9.4 (1988); 53 Fed.Reg. 17,698 (May 18, 1988).

The Administrator published the 1983 and 1988 regulations as final, without opportunity for public comment, because the amendments "merely reflect statutory changes in the law" and therefore providing for public comment would have no effect on the changes mandated by Congress. 48 Fed.Reg. 8069 (February 25, 1983); 53 Fed.Reg. 17,698 (May 18, 1988). It therefore appears that, in the Administrator's view, the amendments to the regulations were clear and presumably not subject to misinterpretation.

The language of 38 U.S.C. § 767(a) reads as follows:

(a) Any policy of insurance purchased by the Administrator under section 766 of this title shall automatically insure against death—

(1) any member of a uniformed service on active duty, active duty for training, or inactive duty training scheduled in advance by competent authority;

(2) any member of the Ready Reserve of a uniformed service who meets the qualifications set forth in section 765(5)(B) of this title; and

(3) any member assigned to, or who upon application would be eligible for assignment to, and Retired Reserve of a uniformed service who meets the qualifications set forth in section 765(5)(C) of this title;

in the amount of $50,000 unless such member elects in writing (A) not to be insured under this subchapter, or (B) to be insured in an amount less than $50,-000 that is evenly divisible by $10,000. The insurance shall be effective the first day of active duty or active duty for training, or the beginning of a period of inactive duty training scheduled in advance by competent authority, or the first day a member of the Ready Reserve meets the qualifications set forth in section 765(5)(B) of this title, or the first day a member of the Reserves, whether or not assigned to the Retired Reserve of a uniformed service, meets the qualifications of section 765(5)(C) of this title, or the date certified by the Administrator to the Secretary concerned as the date Servicemen's Group Life Insurance under this subchapter for the class or group concerned takes effect, whichever is the later date.

We cannot read this language to mean anything other than that the increased policy coverage inures to the benefit only of those people who are "member[s] of a uniformed service on active duty" and is effective either on the first day of active duty or the date certified by the Administrator as the date that the life insurance class or group takes effect, whichever is later. The district court read this language as referring only to the member's eligibility to receive a policy and determined that once the policy is in effect, the individual is entitled to whatever increased coverage Congress provides.

However, the language simply does not say eligibility but refers to automatic insurance under the policy. James Underwood's policy was for $35,000. Nothing in the intervening Congressional action changes the coverage of an already issued policy. Indeed, the language of the statute has no effect on an individual who is no longer in active service and who is insured under a previously issued policy at the lower level.

Certainly, had Congress intended the increases to apply retroactivity to former ser-

vice members still covered by their policies under 38 U.S.C. § 768(a)(1) (1988), it could have so stated when the 1985 amendments were made. And indeed, by a later amendment (approved December 28, 1985), Congress specifically extended the $50,000 coverage to members who died after December 11, 1985, but before January 1, 1986. Pub.L. 99–227, § 3 (December 28, 1985), 99 Stat. 1745, 1746.

We conclude that the proviso that the $50,000 coverage does not apply to members of a uniformed service separated before January 1, 1986, means exactly what it says, *i.e.,* that in order to qualify for the increased amount, Sergeant Underwood had to have been on active duty as of January 1, which he was not. We further see no reason to depart from the analysis of *Garvey v. Servicemen's Group Life Insurance,* 584 F.Supp. 623, 625 (M.D.Pa. 1984) (Congress only intended to cover under increase those qualifying members), which research indicates is the only other decision on the subject.[1]

In denying defendant's motion for reconsideration of its earlier ruling in plaintiff's favor, the district court noted and apparently relied on the fact that as of December of 1987 there existed no regulation specifying that the $50,000 coverage did not apply to those members separated prior to January 1, 1986. Indeed, not until several months later did the Administrator finally promulgate the change to 38 C.F.R. § 9.4 covering the 1985 statutory amendment. We note that the change in the regulation accompanying the October 17, 1981, amendment to 38 U.S.C. § 767(a) (increasing the amount of coverage from $20,000 to $35,000) was not adopted until February 25, 1983. 38 C.F.R. § 9.4 (1987) ($35,000 coverage does not apply to members separated prior to December 1, 1981). It appears the Administrator simply has not been prompt in promulgating these regulations.

Because Sergeant Underwood was not on active duty at the time the increase in insurance from $35,000 to $50,000 became

effective, his beneficiary is only entitled to the $35,000.

REVERSED.

---

1. In *Garvey,* the court held that the 1981 amendment increase in coverage was not applicable to plaintiff's decedent, who had been transferred from the Ready Reserve of the United States Navy as not physically qualified prior to the effective date of the increase.