Chase **MORSEY, Jr.,** Plaintiff,

v.

**CHEVRON USA, INC.,** Defendant.

Civ. A. No. 89–1571–T.

United States District Court,
D. Kansas.

Nov. 15, 1991.

Michael K. Johnston, Hampton, Hampton, Christensen, Johnston & Eisenhauer, Pratt, Kan., Barry Langberg, Hayes, Hume, Petas & Langberg, Elizabeth Mann, Allan S. Cohen, Barry B. Langbert & Associates, Los Angeles, Cal., for plaintiff.

Gerald N. Capps Jr., Joseph W. Kennedy, Morris, Laing, Evans, Brock & Kennedy, Chtd., Wichita, Kan., Robert L. Bezek, Jr., Anderson, Byrd, Richeson & Flaherty, Ottawa, Kan., for defendant.

## MEMORANDUM AND ORDER

THEIS, District Judge.

This matter is before the court on the defendant's motion to stay (Doc. 50). Chevron USA, Inc. (Chevron) seeks to stay these proceedings in federal court pending the resolution of certain issues before the Kansas Corporation Commission (KCC). Chevron's motion invokes the doctrine of primary jurisdiction. Plaintiff opposes the motion to stay and requests oral argument; however, the court does not believe argument would assist the determination of this matter.

Plaintiff filed this action in the District Court of Barber County, Kansas. Chevron removed the case to this court based on diversity of citizenship. Plaintiff alleges that he is the owner of an oil and gas lease known as the Newkirk "B" lease, covering all of Section 20, Township 33 South, Range 11 West, lying North and East of the Railroad right of way, in Barber County, Kansas. The Newkirk "B" lease consists of six producing wells. Plaintiff alleges that Chevron is operating a waterflood project known as the "Rhodes Field", including Sections 16, 17 and 21, Township 33 South, Range 11 West, all in Barber County, Kansas. Plaintiff alleges that the Rhodes Field produces oil and gas primarily from the Mississippian formation at approximately 4,450 feet below ground level. The Mississippian formation is alleged to be a brittle and easily fractured formation.

Plaintiff alleges that Chevron has a duty to conduct its waterflood operations in such as manner as to not cause injury to the property of another producer in a common reservoir. Plaintiff asserts in Count I that Chevron has breached its duty to adjoining producers by injecting fresh water into the Mississippian formation of the Rhodes Field at pressures that caused severe channeling to occur, thereby causing the injected water to flow towards and flood the plaintiff's producing wells. Plaintiff alleged both temporary and permanent damages. In Count II, plaintiff alleges that Chevron knew or should have known that the pressures used to inject water into the Mississippian formation were in excess of those required to fracture the formation, causing fractures to become channels and causing damage to the Mississippian formation and adjoining landowners. Plaintiff alleged that Chevron is strictly liable for the harm caused to plaintiff's property. In Count III, plaintiff alleged that Chevron's waterflood project constituted a continuing nuisance. Plaintiff prayed for an injunction prohibiting Chevron from continuing the water injection. In Count IV, plaintiff asserted that Chevron had constructive or actual knowledge that the injection pressures used were well above the fracture pressure of the reservoir, that direct channeling exists between Chevron's wells and plaintiff's producing wells, and that Chevron was injecting between 1,500 to 2,000 more barrels of water per day into the formation than was being produced. Plain-

tiff alleged that Chevron's actions were willful and wanton in nature, entitling him to recover punitive damages. Doc. 42 (amended complaint).

Chevron's motion to stay and memorandum in support merely assert that certain unspecified technical, geological, and regulatory issues are presented which require the KCC's expertise. Chevron does not specify any particular issues until its reply brief. In its reply, Chevron asserts that the specific issues which need to be addressed by the parties before the KCC are: (1) whether Chevron has operated its waterflood in compliance with KCC rules and regulations; (2) whether plaintiff has operated its waterflood in compliance with KCC rules and regulations; (3) whether the permitted pressures and permitted volumes in the waterflood are excessive given the geological formation, reservoir mechanics, and correlative rights for the constituent lease owners of the waterflood; (4) whether the KCC has determined the common source of supply (Rhodes Field) as being geologically damaged by the operation of the waterfloods in the Rhodes Field, thus constituting economic waste within the definition of K.S.A. 55–201, et seq.; (5) whether the Chevron wells, wellbores, and supporting mechanical devices are operating within KCC rules and regulations; (6) whether the Morsey wells, wellbores, and supporting mechanical devices are operating within the KCC rules and regulations.

The plaintiff does not dispute that Chevron operated its waterflood pursuant to a valid permit issued by the KCC. Plaintiff also accepts, for purposes of this litigation, Chevron's position that its wells and wellbores were operating within KCC rules and regulations.

From the matters before the court, it appears that both parties have KCC approval to waterflood the Mississippian formation. With regard to this specific dispute, the parties met with KCC representatives in an attempt to settle the matter prior to suit being filed. The parties agreed that tracer tests would be conducted to determine whether plaintiff's wells were being flooded by Chevron's injection

wells. The parties dispute the meaning of the test results. In a letter from plaintiff's counsel to an attorney with the KCC dated September 6, 1989, plaintiff's counsel requested that the KCC issue an order shutting down the injection wells. Apparently, no KCC proceedings were held on this matter. Chevron has shut down one of its fresh water injectors, apparently voluntarily. Chevron asserts that it has informed the KCC of this development. The parties have deposed three representatives of the KCC regarding this case.

 Primary jurisdiction is a discretionary doctrine. *Marshall v. El Paso Natural Gas Co.*, 874 F.2d 1373, 1377 (10th Cir.1989). Chief Judge O'Connor of this District has recently summarized the doctrine of primary jurisdiction as follows:

> The doctrine of "primary jurisdiction" applies in situations where a claim, originally cognizable in the courts, requires the resolution of issues which, under a regulatory scheme, have been placed in the hands of an administrative body. *United States v. Western Pacific Railroad Co.*, 352 U.S. 59, 63–64, 77 S.Ct. 161, 164–65, 1 L.Ed.2d 126 (1956). In cases where the doctrine is found to apply, the judicial process is suspended pending referral of such issues to the administrative body for its views. *Id.*
>
> To determine whether the doctrine applies in a given case, it is necessary to decide "whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation." *Id.* at 64 [77 S.Ct. at 165]. The purposes for the doctrine are primarily the desire of uniformity in decisions regarding administrative questions and resolution of particular economic or technical issues by an agency having the particular expertise and specialized knowledge. *Nader v. Allegheny Airlines*, 426 U.S. 290, 305, 96 S.Ct. 1978, 1987, 48 L.Ed.2d 643 (1976).

*Commander Properties Corp. v. Beech Aircraft Corp.*, 745 F.Supp. 650, 652 (D.Kan.1990). The court does not find that the purposes of uniformity of regulation

and agency expertise would be furthered by the KCC's resolution of the issues identified by Chevron.

■ First, the uniformity of regulation factor does not point to deferring to an administrative body. The concern for uniformity of regulation is not implicated when an agency policy decision is not reviewed by the court. This case does not hinge on the validity of any KCC order. Plaintiff does not challenge the validity of the KCC order which allows Chevron to waterflood. Indeed, plaintiff does not even argue that the agency rules and regulations regarding waterflooding have been violated.

■ The KCC's order authorizing Chevron to flood its wells does not immunize Chevron from liability if its flooding operations have harmed the plaintiff. *See Tidewater Oil Co. v. Jackson*, 320 F.2d 157, 161–62 (10th Cir.), *cert. denied*, 375 U.S. 942, 84 S.Ct. 347, 11 L.Ed.2d 273 (1963); *see also Greyhound Leasing & Financial Corp. v. Joiner City Unit*, 444 F.2d 439, 444–45 (10th Cir.1971) (Oklahoma law). It is undisputed that the KCC lacks jurisdiction to award damage relief. The court does not believe it necessary to stay this action to require plaintiff to seek a cease and desist order from the KCC. Such an action does not appear to be a prerequisite to a recovery of damages. The fact that Chevron operates its waterflood with KCC permission does not absolve it from liability for any property damage it may have caused to plaintiff's land.

Second, the court does not believe that agency expertise is necessarily implicated by the instant case. The court will not have to interpret prior decisions of the KCC, since the plaintiff has conceded that Chevron operated its waterflood pursuant to a valid permit and in compliance with applicable rules and regulations. The factual issues regarding oil production and the nature of the Mississippian formation may be complex, but may be made understandable to a jury through expert testimony.

■ The district court is not required to defer factual issues to an agency under the primary jurisdiction doctrine if those factual issues are of the sort that the court routinely considers. *Marshall*, 874 F.2d at 1377. The factual issues presented in this case and the determination of whether Chevron's waterflooding caused harm to the plaintiff's property are not determinations outside the conventional knowledge of the judge and jury. *See Tidewater Oil Co. v. Jackson*, 320 F.2d 157 (10th Cir.), *cert. denied*, 375 U.S. 942, 84 S.Ct. 347, 11 L.Ed.2d 273 (1963). Plaintiff is seeking to recover damages to his property caused by Chevron's allegedly negligent or otherwise wrongful operations. Property damage issues are of the type that courts routinely consider. Further, the present case involves a dispute over private rights. It appears that no public rights such as conservation are involved here. In this situation, the court need not defer to the KCC. *See Marshall*, 874 F.2d at 1379–80.

■ The court looks unfavorably on the primary jurisdiction argument because of the untimely manner in which Chevron asserted the defense. Courts may weigh the timeliness of the assertion of the defense in making their discretionary decision to invoke the primary jurisdiction doctrine. *See Inman Freight Sys., Inc. v. Olin Corp.*, 807 F.2d 117, 120 (8th Cir.1986); *In re Chicago, M., St. P. & Pac. R.R.*, 713 F.2d 274, 282 (7th Cir.1983), *cert. denied*, 465 U.S. 1100, 104 S.Ct. 1594, 80 L.Ed.2d 126 (1984); *Mississippi Power & Light Co. v. United Gas Pipe Line Co.*, 532 F.2d 412, 419 (5th Cir.1976), *cert. denied*, 429 U.S. 1094, 97 S.Ct. 1109, 51 L.Ed.2d 541 (1977); *Danden Petroleum Inc. v. Northern Natural Gas Co.*, 615 F.Supp. 1093, 1102–03 (S.D.Tex.1985). Chevron waited nearly two years from the time it removed this action to assert primary jurisdiction. Chevron has not brought to the court's attention any facts relevant to this theory that were not within Chevron's knowledge from the inception of this lawsuit. The court is not willing to extend these proceedings additional months or years by referring the matter to the KCC.

In the motion to stay and the responsive pleadings, both parties have discussed whether punitive damages are recoverable

in this action. In the absence of a dispositive motion aimed at this claim for relief, the court expresses no opinion on the subject.

IT IS BY THE COURT THEREFORE ORDERED that Chevron's motion to stay (Doc. 50) is hereby denied.

IT IS FURTHER ORDERED that plaintiff's request for oral argument (Doc. 55) is hereby denied.